## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* LEE RENNELS FINNESEY

[Misc. Docket (Subtitle BV) No. 10, September Term, 1977.]

*Decided September 26, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and RICHARD P. GILBERT, Chief Judge of the Court of Special Appeals, specially assigned.

*Francis S. Brocato* for respondent.

*John Addison Howard, Deputy Bar Counsel,* for petitioner.

PER CURIAM:

On August 19, 1977 the respondent was charged by the Attorney Grievance Commission, acting through Bar Counsel, with designated violations of the Code of Professional Responsibility. The matter was referred to a three-judge panel of the Supreme Bench of Baltimore City pursuant to the provisions of Rule BV10.

The panel concluded, after an evidentiary hearing, that the misconduct had been proved only in part; it recommended that the respondent be suspended from the practice of law for a period of six months. The respondent filed exceptions to the panel's determination, primarily on the ground that the recommended sanction was too harsh. He urged that the appropriate sanction was a reprimand.

After careful review of the panel's findings of fact and conclusions of law, we agree with the respondent that the recommended six-month suspension was too severe. We do not agree, however, that a reprimand is the appropriate sanction. Rather, we conclude, in view of the hereinafter quoted portions of the panel's memorandum opinion, which we adopt, that a suspension of thirty days is the proper sanction.

"* * *

"The Respondent, Lee Rennels Finnesey, was admitted as a member of the Bar of the State of Maryland on December 19, 1969. There have been no prior complaints filed against the Respondent for unethical or unprofessional conduct.

"Bar Counsel's Petition specifically charged Respondent with the violation of Disciplinary Rules 1-102 (A) (4) and Rule 6-101 (A) (1), (2), which read as follows:

'DR 1-102 Misconduct —

(a) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

DR 6-101 Failing to act competently.

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.'

"The Respondent was served with a copy of the Petition, together with interrogatories and request for admission of facts, on or about September 14, 1977, but did not file a response or answer thereto.

"A Decree Pro Confesso was issued against Respondent on October 19, 1977.

"Thereafter, although duly notified, the Respondent failed to appear at a Hearing before the Panel on October 26, 1977.

"On November 3, 1977, Respondent filed a Petition to Re-open the Hearing. Bar Counsel filed an Answer thereto, or in the alternative a Motion Ne Recipiatur or to Strike Respondent's Motion to Re-open Hearing.

"Answer to Interrogatories were filed by Respondent on November 28, 1977.

"The Panel reconvened on November 29, 1977, and denied the Motion Ne Recipiatur or to Strike.

"Mr. Finnesey was allowed to testify on that date. He did not deny the allegations of the Bar Counsel as contained in the original Petition and as set forth in the unanswered Admission of Facts.

"Basically, it was contended that in January or February, 1973, the Respondent was retained to represent a minor, Deborah Ann Bentley, (nee Carroll) in regard to a motor tort. There was an alleged 'phantom vehicle' involved in the occurrence, and the Respondent filed the Notice of Intention to Make Claim form with the Unsatisfied Claim and Judgment Fund of the Maryland Automobile Insurance Fund, as required under *Article 48 A, section 245,* Maryland Code.

"Although he advised the client that it had been done, no petition seeking leave of court to sue the Fund was ever filed by Respondent. He represented to the client that at least three (3) different dates had been set for a hearing on the required petition but

that the matter was postponed by the Court on each occasion.

"In the late summer or early fall of 1975, the client retained new counsel.

"During October, 1975, the new counsel wrote two (2) letters to Respondent requesting the file and a status report. On December 28, 1975, Respondent forwarded the file.

"Unable to locate a Petition for Leave to File Suit against the Fund in the file, the new attorney wrote to Respondent on January 6, 1976, requesting a copy of all pleadings. Respondent did not reply.

"It is conceded that the Respondent had never filed the said Petition and that no hearings were ever scheduled, although he had so advised the client.

"Prior to the Petition for Disciplinary Action, Bar Counsel had informed Respondent of the complaint and requested a reply. Respondent failed to answer two (2) such letters dated April 1, 1976 and April 22, 1976, (Petitioner's Exhibit 7-8) and declined to appear for a hearing before an Inquiry Panel on September 22, 1976.

"Indeed, the first acknowledgment by Respondent of the existence of the entire proceedings was his filing of the Petition to Re-open the Hearing on November 3, 1977.

"At the hearing on November 29, 1977, it was conceded that the Respondent had paid outstanding medical bills from monies received under PIP coverage. The Respondent had neither claimed nor received a fee from the client. There was no monetary loss incurred by the client as a result of Finnesey's failure to properly follow through with her claim.

"The Respondent stated that his failure to appear at the Hearing before the Panel on October 26, 1977, was due to his representation of a client in a criminal matter before, 'a Court in Baltimore County.' His

only explanation for his failure to respond to the prior notices of the Attorney Grievance Commission or to appear before the Inquiry Panel was that he felt he had no defense to the charges; that he was greatly embarrassed by the charges and further that he was prepared to accept disciplinary judgment. He attributed his neglect of Mrs. Bentley's case on mental depression brought about by personal financial reverses.

\* \* \*

"Although the Petition alleges violation of DR 6-101(A) (1) and (2), Failure to Act Competently, there has been no evidence to support these charges. Neither the Respondent nor the Panel have ever been informed as to what conduct on the part of Mr. Finnesey amounts to violation of this rule. Therefore, the Panel finds that no violation of this rule has been proven.

*Attorney Grievance v. Brewster,* 280 Md. 473, 480.

"The thrust of Bar Counsel's memorandum of law is that Finnesey's conduct was a violation of DR 1-102(A) (4).

'Misconduct.

(a) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.'

*DR Rule 1-102,* Maryland Rules

"Respondent does not deny that he lied to the client on several occasions regarding the status of the litigation. Such conduct falls somewhat short of dishonesty, fraud, and deceit which three require a debased morality coupled with an intention to injure another person.

'Dishonesty — Disposition to lie, cheat or defraud; untrustworthiness; lack of integrity.'

'Fraud — Fraud consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury. As distinguished from negligence, it is always positive, intentional.'

'Deceit — A fraudulent and cheating misrepresentation, artifice, or device, used ... to deceive and trick another, who is ignorant of the true facts, to the prejudice and damage of the party imposed upon.'

*Black's Law Dictionary,* Revised Fourth Edition.

"Misrepresentation, however, does not necessarily require an intent to do harm to another but is merely a misstatement of fact in order to deceive or mislead.

'Misrepresentation — Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.'

*Black's Law Dictionary,* Revised Fourth Edition.

"Dishonesty, fraud and deceit may all involve a misrepresentation but in addition they include the element of an intent to cheat another.

"There is no evidence nor indeed any contention by the Attorney Grievance Commission that Mr. Finnesey intended to cheat or defraud the client. He was dilatory in performing his duties and sought to cover up his neglect by assuring the client that everything possible had been done to perfect her claim.

"It is fortuitous that the client suffered no monetary loss as a result of Mr. Finnesey's conduct. Whether she would have been so fortunate without new representation is debatable.

"Neglect and inattentiveness to a client's interests are regarded as a violation of the Canons of Ethics which subjects an attorney to disciplinary action.

*Attorney Grievance Commission v. Pollack,* 279 Md. 225, 237 [369 A. 2d 61 (1977)]; *Md. State Bar Ass'n. v. Phoebus,* 276 Md. 353, 361 [347 A. 2d 556 (1975)].

"Although not calculated to cheat or defraud Mrs. Bentley, Mr. Finnesey's conduct in neglecting his duty to his client and then covering up his inattentiveness by deliberately lying to his client, in our view constitutes misrepresentation and a violation of DR Rule 1-102(A) (4).

\* \* \*

"In their memoranda filed with the Court, Counsel for the Bar and for Mr. Finnesey have set forth citations supporting their respective positions as to what type of sanctions should be recommended by the Panel. Disbarment for this first violation, involving neglect rather than dishonesty, seems harsh, while mere censure for conduct which erodes the credibility of the legal fraternity is ineffective 'as a catharsis for the profession and a prophylactic for the public.'

*Md. State Bar Ass'n v. Agnew,* supra at 549.

"It is the unanimous opinion of the Panel that the unprofessional and negligent conduct of Lee Rennels Finnesey merits disciplinary action. The Panel is unanimous in its opinion that the Respondent should not be disbarred.

\* \* \*

/s/ J. Harold Grady
/s/ Harry A. Cole
/s/ James W. Murphy"

We think a 30-day suspension in this case will adequately protect the public interest. The suspension to begin October 26, 1978.

*It is so ordered.*