532 A.2d 1367

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

### Crystal Eulalia PINKNEY.

Misc. Docket (Subtitle BV) No. 4, Sept. Term, 1987.

Court of Appeals of Maryland.

Nov. 5, 1987.

Melvin Hirshman, Bar Counsel and Kendall R. Calhoun, Asst. Bar Counsel for the Atty. Grievance Com'n of Maryland, for petitioner.

Edward Smith, Jr., Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against Crystal Eulalia Pinkney, alleging violations of the disciplinary rules of the Code of Professional Responsibility. We referred the matter, pursuant to Maryland Rule BV9 b, to Judge Howard S. Chasanow of the Circuit Court for Prince George's County to make findings of fact and conclusions of law. After conducting an evidentiary hearing, Judge Chasanow filed detailed findings and conclusions as follows:

"The Respondent, Crystal Eulalia Pinkney was admitted as a member of the Maryland Bar on May 22, 1981. She maintains an office for the practice of law at Suite 502, 6192 Oxon Hill Road, Oxon Hill, Maryland.

"In February, 1983, Marilyn Manners asked Respondent to file a lawsuit on her behalf seeking compensation from an automobile manufacturer and several dealerships for an automobile which Ms. Manners purchased and which she felt was defective. The conversation took place at the home of Ms. Manners' mother. Ms. Manners' mother had been babysitter and 'second mother' to Respondent's daughter. She had also babysat for other members of Respondent's family, and both families had a close relationship. Respondent had represented other members of Ms. Manners family on prior occasions for minor legal problems without compensation.

"Respondent was aware, from previous conversations with Ms. Manners, that in 1982 she bought a 'dealer vehicle' with 7,000 miles on the odometer. Ms. Manners had several complaints about the vehicle, including brake problems, rattling noises under the hood, and side molding

falling off. In addition, she was convinced that the dealers and service people were 'lying to her.'

"Ms. Manners gave Respondent $70.00 to cover filing fees and service of process fees in the anticipated suit. No other legal fees were requested or expected by Respondent, and there was no fee agreement. Respondent did not believe that the vehicle was defective or that there was anything wrong with the automobile other than normal maintenance problems, and although she agreed to file suit on Ms. Manners behalf, she hoped the situation would be resolved informally. Respondent testified that she did not really consider Ms. Manners a client and she never expected or wanted anything out of the case, even though she had agreed to represent Ms. Manners and file suit on her behalf.

"At the time of her agreement with Ms. Manners, Respondent was associated with a law firm in the District of Columbia, but was not supposed to be representing clients on her own. Respondent indicated to Ms. Manners that she was going to associate with another attorney, who would assist her with the case.

"The $70.00 Ms. Manners gave the Respondent was not placed in an escrow account. Instead, Respondent deposited the money in her personal checking account. Respondent had no intention of profiting from that deposit; indeed in her efforts to resolve Ms. Manners' problem, she spent her own funds in excess of the $70.00 for towing and automobile inspections by two Virginia dealers, one such inspection cost Respondent $84.00, the cost of the other was not established. Respondent also paid for many long distance phone calls, including long distance calls from Ms. Manners.

"The Respondent did not research the merits of Ms. Manners' claim and did not determine when the applicable Statute of Limitations would run. Instead, she attempted to resolve Ms. Manners' problem without litigation by writing letters and having telephone conversations with the automobile manufacturer and the dealerships involved.

The initial letters written on behalf of Ms. Manners were written on the letterhead of the law firm which employed the Respondent, despite the fact that the Respondent was representing Ms. Manners on her own time and not on behalf of the law firm.

"The Respondent drafted a Bill of Complaint against the manufacturer and two dealerships so she would have it available if it became necessary to file suit. Subsequently, after repeated inquiries by Ms. Manners as to the progress of the litigation, Respondent misrepresented to Ms. Manners that she had filed suit in the Circuit Court for Prince George's County, Maryland giving Ms. Manners a false docket reference. Respondent prepared purported pleas of the Defendants and signed the names of other attorneys to those fictious pleadings. Respondent also prepared interrogatories, purportedly from one of the Defendants, in order to mislead Ms. Manners into believing her lawsuit was progressing.

"In 1984, Ms. Manners considered selling the car or having it repossessed, but Respondent prevailed on her to retain the automobile, and Ms. Manners complied. Ms. Manners was led to believe that the lawsuit filed on her behalf was scheduled for trial sometime in 1985.

"On or about September 3, 1985, Ms. Manners wrote a letter to the Respondent discharging her and requesting all documents pertaining to her claim in order to seek the services of another attorney. Upon receipt of the letter, Respondent met with Ms. Manners and advised her that the lawsuit had never been filed and that the Statute of Limitations had probably run. Respondent volunteered to pay Ms. Manners $12,000 to compensate her and signed a promissory note to that effect. Ultimately, however, instead of paying off the promissory note, Respondent paid Ms. Manners $3,000, which paid off the balance due on the automobile and which was satisfactory to Ms. Manners.

"Respondent is truly remorseful and contrite as a result of her actions."

## CONCLUSIONS OF LAW

"Respondent violated DR 1–102 (A)(4) by misrepresenting to Ms. Manners that she had filed suit in the Circuit Court for Prince George's County and giving Ms. Manners a false docket reference for that suit; by preparing fictitious pleadings, purportedly to be pleas of the defendants, and signing names of other attorneys to those pleadings; as well as preparing fictitious interrogatories for Ms. Manners to answer.

"Respondent violated DR 6–101 (A)(2) by handling a matter without preparation adequate in the circumstances. She failed to adequately investigate the matter and did not determine what Statute of Limitations was applicable.

"Respondent violated DR 6–101 (A)(3) by neglecting a legal matter entrusted to her. Respondent admitted that she set Ms. Manners' file aside from all of the others in her office and ignored it unless she heard from Ms. Manners. She also failed to adequately investigate and sufficiently research the matter to either establish that there was a cause of action or dissuade Ms. Manners from pursuing the claim if there was insufficient basis to file suit.

"Respondent violated DR 7–101(A)(1) by failing to seek the lawful objectives of her client through reasonably available means by failing to determine whether the client had a valid claim and by failing to file suit if there was a valid claim.

"Respondent violated DR 7–101(A)(2) by failing to carry out the contract of employment entered into with her client. An attorney-client relationship existed between Respondent and Ms. Manners as a result of Respondent's agreement to file suit on behalf of Ms. Manners, despite the fact there was no fee agreement and Respondent did not anticipate a fee. Respondent failed to carry out this contract of employment by not filing suit on behalf of Ms. Manners or not dissuading Ms. Manners from pursuing the lawsuit if she felt it was not viable.

"Respondent violated DR 7–102(A)(3) by damaging her client in the course of a professional relationship. Due to her inaction and her misleading her client about the existence of, and the progress of, the lawsuit, Respondent prevented her client from seeking other counsel and allowed the Statute of Limitations to run. She had an obligation to advise her client if she did not believe that there was a valid claim, and she was not going to file suit on her client's behalf.

"Respondent violated DR 7–102(A)(5) by falsely advising Ms. Manners that a lawsuit had been filed on her behalf and was proceeding to trial, when in fact no suit had been filed.

"Respondent did not violate DR 9–102(A) by failing to deposit, into an escrow account, the $70.00 Ms. Manners gave her for filing fees and service of process. Such costs fall within the narrow exception set forth in DR 9–102(A) for funds advanced for costs and expenses.

"Respondent violated DR 9–102(B)(3) by failing to render an appropriate accounting to Ms. Manners regarding the $70.00, which Ms. Manners had paid to Respondent.

"Respondent violated DR 1–102(A)(1) by virtue of the findings that the other disciplinary rules were violated."

Neither Bar Counsel nor the Respondent took any exceptions to Judge Chasanow's findings. Bar Counsel recommends that the Respondent be suspended from the practice of law for a period of three years. He maintains that this sanction "is warranted in view of the pattern of deception which continued over a period of several years."

In cases where the improper conduct of the lawyer involved misrepresentation, the severity of the sanction necessarily depends on the facts and circumstances of the particular case. *Attorney Griev. Comm'n v. Myers,* 302 Md. 571, 490 A.2d 231 (1985); *Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 479 A.2d 1372 (1984); *Attorney Griev.*

*Comm'n v. Hall,* 298 Md. 230, 468 A.2d 347 (1983). At oral argument before us, the Respondent's counsel characterized Pinkney's misconduct as an aberration committed by an otherwise exemplary attorney who could not begin to rationalize her actions in the course of her uncompensated representation of a family friend. Judge Chasanow, while noting that the Respondent "did not really consider Ms. Manners a client," nevertheless found from the evidence that an attorney-client relationship existed. He also found that the Respondent had paid substantial sums of her own money to her client in a case of doubtful merit. Judge Chasanow further found that the Respondent was truly remorseful and contrite as a result of her actions.

The Respondent is no longer associated with the District of Columbia law firm for which she worked at the time of the misconduct in this case. She is now employed by an insurance company and is required, as a condition of employment, to practice law, namely in Anne Arundel, Baltimore and Prince George's Counties. Her work is supervised by another attorney in her office.

In the highly unusual circumstances of this case, we think a ninety day suspension is an appropriate sanction to protect the public, and to demonstrate to members of the legal profession that such misconduct, even though involving legal services gratuitously provided, simply will not be tolerated. Pinkney's suspension shall commence 30 days from the date of the filing of the opinion in this case. Prior to termination of the suspension, she shall pay all costs of the disciplinary proceedings.

IT IS SO ORDERED: RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CRYSTAL EULALIA PINKNEY.