560 A.2d 15
**ATTORNEY GRIEVANCE COMMISSION**

v.

**Edwin Lawrence DWORKIN.**

**Misc. Docket (Subtitle BV) No. 12 Sept. Term, 1988.**

Court of Appeals of Maryland

July 3, 1989.

**458**

Melvin Hirshman, Bar Counsel, and Walter D. Murphy, Jr., Asst. Bar Counsel for the Atty. Grievance Com'n of Maryland.

Henry J. Myerberg, Towson, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL and SMITH (MARVIN H., retired, Specially Assigned), JJ.

BLACKWELL, Judge.

The Attorney Grievance Commission (Commission), represented by Bar Counsel, filed a petition for disciplinary action against Edwin Lawrence Dworkin (Dworkin) alleging violations of the Code of Professional Responsibility.[1] In a personal injury case, Dworkin allowed the statute of limitations to run, failed to notify his client of the status of the case, and misrepresented that settlement offers had been made on three separate occasions. Pursuant to Maryland Rule BV9b, this Court referred the matter to Judge William R. Buchanan, Sr. of the Circuit Court for Baltimore County to make findings of fact and conclusions of law.

At the evidentiary hearing on November 9, 1988, the Commission and Dworkin submitted an Agreed Statement of Facts to the circuit court and presented oral argument. According to this Statement, the complainant, Olga S. Romeo (Romeo), was seriously injured on May 19, 1980 "when

---

1. All references to disciplinary rules are to Md. Rule 1230, Code of Professional Responsibility, Appendix (1986) unless otherwise indicated. The Code of Professional Responsibility governs the conduct of attorneys in Maryland until January 1, 1987. After that date, the Rules of Professional Conduct apply. Dworkin's misconduct occurred before the effective date of the new rules.

she tripped and fell over a pole while she was walking on her way to work on a State of Maryland parking lot...."
Dworkin was retained shortly thereafter to pursue all claims for personal injury arising from the accident. "While the Respondent had conducted some investigation into Mrs. Romeo's case he neglected the case and let the statute of limitations run on any claim she may have had other than her Worker's Compensation Claim which she had filed on August 12, 1981...."

The parties further commented on the liability issues as follows:

The facts and circumstances surrounding Mrs. Romeo's accident indicate that any liability on the part of any third party for Mrs. Romeo's injuries and damages would be very questionable, if not non-existent. Mrs. Romeo testified before the inquiry panel that the accident was a result of her tripping over a pole lying on the ground. She indicated that she didn't see it and that she was distracted at the time of her fall because she was looking in her purse and ... 'there was no way I could have seen that pole because I carry a big tote.' As such, there were substantial questions concerning the identity of the person or persons responsible for placement of the pole, notice of the presence of same and Mrs. Romeo's contributory negligence as a matter of law for her failure to look where she was going. Nonetheless, the Respondent never advised Mrs. Romeo of his opinion as to the lack of liability or the slim chance of recovery from a third party nor did he advise her that the statute of limitations on her claim had expired.

Subsequently, in response to correspondence and telephone inquiries concerning the status of the case, Dworkin misrepresented that settlement offers had been received on three separate occasions. In the spring of 1984, "Mrs. Romeo rejected the $2,000.00 offer and said that she would file suit if necessary." In April, 1986, Romeo again rejected a $6,000.00 settlement offer when she learned that additional surgery was necessary. "Sometime thereafter the Re-

spondent offered Mrs. Romeo an additional $1,000.00 in the form of a subtraction from his counsel fee." This final offer was also declined. The parties stipulated that "Respondent never advised Mrs. Romeo who was making these settlement offers and he never mentioned the name of any insurance adjuster or company. If Mrs. Romeo had accepted either of these settlement offers, the Respondent would have paid the money from his own funds."

In August, 1986, at Mrs. Romeo's request, the Respondent prepared and sent Mrs. Romeo a draft of a Complaint he had prepared on her behalf relative to her accident. The Complaint contained numerous errors as to date and time of accident and named a construction company which Mrs. Romeo never heard of. Mrs. Romeo advised the Respondent of these errors and he agreed to draft a corrected Complaint. On or about August 13, 1986, Mrs. Romeo met with the Respondent in his office and reviewed the revised Complaint. However, she refused to sign it and she then discharged the Respondent as her attorney. The Respondent still had not advised Mrs. Romeo that the statute of limitations had run on any third party civil action she may have had.

Finally, the Commission and Dworkin agreed "contrary to the assertion contained in the Complaint for Disciplinary Action, the Respondent did not neglect Mrs. Romeo's Worker's Compensation claim.... Mrs. Romeo received all temporary total benefits to which she was entitled while she was out of work, including payment of her medical expenses."

The Agreed Statement of Facts concluded with the following commentary:

> The Respondent candidly admitted his actions before the inquiry panel proceeding in this matter and stated, 'I am embarrassed, I am ashamed of what I did. ... I respect the position that I hold in the community as a member of the bar and am ashamed and embarrassed [for] what I did. I will regret it every day of my life.'

 Judge Buchanan summarized his findings of fact, and concluded that Dworkin violated the following disciplinary rules:

1. DR 1–102(A)(4) Misconduct.

A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or *misrepresentation* (emphasis added).

2. DR 1–102(A)(5)

A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

3. DR 6–101(A)(2) Failing to Act Competently.

A lawyer shall not handle a legal matter without preparation adequate in the circumstances.

4. DR 6–101(A)(3)

A lawyer shall not neglect a legal matter entrusted to him.

5. DR 7–101(A)(2) Representing a Client Zealously.

A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

The judge additionally found no basis for the Commission's allegation that Respondent neglected Romeo's Worker's Compensation claim. As final considerations, the court noted the evidence supported the findings, from the testimony and character witnesses, that,

a. Prior to this incident, Respondent had an unblemished record at the Bar;

b. His conduct in this particular incident was an aberration and a bad mistake in judgment. The Agreed Statement of Facts indicates that Mrs. Romeo's chance for recovery in the lawsuit that is the basis of this complaint would be remote;

c. Mrs. Romeo has not suffered any losses in medical expenses . . .;

d. The article in the Evening Sun, [concerning the complaint] had a devastating effect upon the Respondent; and

e. The Respondent is humble and repentant for his actions.

Dworkin filed no exceptions to Judge Buchanan's findings. The Commission excepted to the trial judge's failure to characterize the Respondent's conduct as three aberrations rather than one. Bar Counsel emphasized that Dworkin made three separate representations concerning settlement offers. Respondent's counsel did not deny the fact that three misrepresentations occurred. In reviewing the record, it is clear the trial judge's conclusion that Dworkin's conduct "was an aberration and a bad mistake in judgment" was intended to be a reference to his handling of the Romeo matter in general. It was not meant to categorize or minimize the conduct as constituting only one act. He stated that Respondent had an unblemished record except for this case. We therefore overrule petitioner's exception to the trial judge's finding. There is clear and convincing evidence in the record sufficient to support each of the court's findings as to the five disciplinary violations.

■ We next turn to the appropriate sanction. Bar Counsel suggests a six month suspension. Respondent recommends a public reprimand as the proper sanction. In a recent case, *Attorney Griev. Comm'n v. Kolodner*, 316 Md. 203, 208, 557 A.2d 1332, 1334 (1989), we reemphasized "the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney," quoting *Attorney Griev. Comm'n v. Kahn*, 290 Md. 654, 682, 431 A.2d 1336, 1351 (1981); *Attorney Griev. Comm'n v. Myers*, 302 Md. 571, 580, 490 A.2d 231, 236 (1985). In carrying out the interest of protecting the public, the severity of the sanction depends on the totality of the circumstances and the facts of each case. *Kolodner, supra.* This guiding principle is particularly apt in grievance cases when the improper conduct of the lawyer involves misrepresentation.

*See Attorney Griev. Comm'n v. Pinkney,* 311 Md. 137, 142–43, 532 A.2d 1367, 1370 (1987); *see also Attorney Griev. Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984).

The facts of the present case are similar to those found in *Attorney Griev. Comm'n v. Finnesey,* 283 Md. 541, 391 A.2d 434 (1978) and in *Pinkney, supra.* In *Finnesey,* Respondent misrepresented to his client that he had filed the required petition with the Maryland Automobile Insurance Fund. In *Pinkney,* Respondent misrepresented that suit had been filed and prepared various fictitious pleadings. In each of the matters, the attorney misled the client as to the correct status of the case, and perpetuated the misrepresentations. It is our view that a similar sanction should be imposed against Dworkin as was given in the above cases. As we have recognized on numerous occasions, suspension of the lawyer protects the public "because it demonstrates to members of the legal profession the type of conduct which a court will not tolerate without sanction. *Myers,* 302 Md. at 580–81, 490 A.2d at 236; *Attorney Griev. Comm'n v. Collins,* 295 Md. 532, 555, 457 A.2d 1134, 1145 (1983), quoting *Attorney Griev. Comm'n v. Lockhart,* 285 Md. 586, 596–97, 403 A.2d 1241, 1247 (1979).

The record here indicates that Dworkin has been a respected member of the Maryland Bar since December 19, 1969. He is no longer associated with the private litigation firm, which represented Romeo, and has subsequently attained employment with a title company. Throughout the proceedings before the inquiry panel and the trial court, Dworkin has candidly admitted his misconduct and has sincerely expressed remorse. Although the disciplinary violations in the present case appear to be isolated occurrences, we nonetheless recognize the seriousness of the misrepresentations. Dworkin perpetuated the misconduct over a two year period by intentionally misleading his client concerning the status of negotiations and in allowing her to believe that a third party claim was valid. The length of

the period of deception to the client is a proper consideration in our evaluation of the sanction.

Under these circumstances, we conclude that a sixty-day suspension is an appropriate sanction to demonstrate that such misconduct simply will not be tolerated. Dworkin's suspension shall commence 30 days from the date of the filing of this opinion. Prior to termination of the suspension, he shall pay all costs of the disciplinary proceedings.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST EDWIN LAWRENCE DWORKIN.