913 A.2d 41

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Kenneth Stanford WARD.

No. 59, Sept. Term, 2005.

Court of Appeals of Maryland.

Dec. 18, 2006.

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Jean S. Fugett, Jr., Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary Action against Kenneth S. Ward, the respondent. The petition charged that the respondent violated Rules 1.1, Competence,[2] 1.3, Diligence,[3]

---

1. Maryland Rule 16–751, as relevant, provides:
   "(a) Commencement of disciplinary or remedial action.
   (1) *Upon approval of the Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Rule 1.1 provides:
   "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

3. Pursuant to that Rule, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

1.4, Communication,[4] 1.5, Fees,[5] 1.16, Declining or Terminating Representation,[6] and 8.4, Misconduct,[7] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16-812.

4. Rule 1.4 provides:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

5. Rule 1.5 provides, as relevant:

"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent."

6. Rule 1.16, as relevant, provides:

\*　　\*　　\*　　\*　　\*　　\*

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

7. Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

We referred the case, pursuant to Rules 16–752(a),[8] to the Honorable Wanda Keyes Heard, of the Circuit Court for Baltimore City, for hearing pursuant to Rule 16–757(c).[9] After a hearing, at which the respondent appeared and participated, Judge Heard found the following facts by clear and convincing evidence.

The respondent was retained, on October 31, 2002, by the complainant, Soraya Thompson–Brashears, whom he agreed to represent, in connection with the estate of her great aunt, the decedent. The complainant had consulted other attorneys, but chose the respondent because "he represented that he was able to proceed without assistance in Maryland and the District of Columbia." In return for opening an estate, the value of which was $210,000.00, $200,000.00 representing the approximate value of real estate titled in the decedent's name, and filing an action against the decedent's neighbor for fraudulently pledging the decedent's property as security for lines of credit, in the amount of $50,000.00, he established for his own,

---

"(c) engage in conduct involving dishonesty, fraud deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice."

\*     \*     \*     \*     \*     \*

8. Rule 16–752(a) provides:
   "(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

9. Maryland Rule 16–757(c) provides:
   "(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

and not her, benefit, the complainant agreed to pay, and did pay, the respondent a $3,000.00 retainer, which was to cover the first twenty (20) hours of work at the rate of $150.00 per hour. The respondent intended, as he informed the complainant, to open the estate first and then proceed immediately against the decedent's neighbor.

The complainant initially tried contacting the respondent for updated information concerning his progress with the legal matters in December and had trouble doing so. When she did reach him, he advised her that he had filed in court and "was waiting to get a date." On December 26, 2002, the respondent received a letter from the Register of Wills of Anne Arundel County informing him of that Office's receipt of the decedent's Last Will and Testament and a petition to open an estate in her name under a Will of No Estate and asking for additional information, *i.e.* a Waiver of Bond, a Death Certificate, clarification of the unsecured debts schedule and a complete list of interested persons. The respondent did not respond to the letter or take any action with regard to it or the estate. Nor did he inform his client, who had heard nothing of the matters during January and February, 2003, except from the mortgage lender, who was inquiring about the status of the estate. The mortgage lender filed, in the Circuit Court of Anne Arundel County, a Petition for Judicial Probate on March 31, 2003, to protect its interest.

The respondent filed a civil action in the Superior Court of the District of Columbia against the decedent's neighbor. The complaint, which was signed by the respondent and Will Purcell, a lawyer admitted to practice in the District of Columbia, but not by the client, alleged fraud and conversion. The complainant also was unaware that Purcell had been "directed" to file the action on her behalf.

Because he was not admitted to practice in the District of Columbia, prior to filing the complaint, the respondent moved, through Mr. Purcell, to appear *Pro Hac Vice* in the Superior Court. In that motion, he represented that he was in good standing in, and that "there [were] no disciplinary complaints

pending against [him] for a violation of the rules" of, the Courts, the Supreme Court of New Jersey and the Court of Appeals of Maryland, to which he was admitted to practice. The motion was filed April 4, 2003. On February 21, 2003, Bar Counsel had notified the respondent of a disciplinary complaint against him then pending in Maryland.

The District of Columbia action was dismissed without prejudice on two occasions, each time for failure to effect service on the defendant, as required by D.C. Rule 4(m). The first occasion was on June 18, 2003. Shortly after that dismissal, the complainant, who had been notified of a scheduling conference in the case, went to the Superior Court on the designated date, August 1, 2003, only to discover that the respondent did not appear. When contacted by the complainant as to why he failed to respond, the respondent advised her that the case had been continued; he did not inform her that the case had been dismissed. The fraud case was refiled by the respondent, with the assistance of Mr. Purcell, on May 5, 2004 and it was once again dismissed for failure of service on the defendant, on July 14, 2004.

The probate case was filed in the wrong court, the Orphans' Court for Anne Arundel County concluded. The decedent was domiciled in Montgomery County. Accordingly, the court ordered, on July 15, 2003, the case transferred to the Montgomery County Orphans' Court "for administration and further action." That was accomplished on July 28, 2003, when the Montgomery County Register of Wills docketed the Anne Arundel County Orphans' Court's order. Subsequently, after a hearing, the complainant was appointed personal representative.

The probate matter did not proceed smoothly. The inventory for the estate was not timely filed, even after a delinquency notice advised the complainant and the respondent of that fact and of the due date to avoid referral for hearing. The inventory was filed by the respondent more than ten days after the designated "due" date. Subsequently, on October 12, 2004, the failure to file a final inventory resulted in a show

cause referral to the Orphans' Court. Another show cause was issued six days later, this one to the complainant and the respondent, asking why the complainant, as personal representative, should not be removed "for failure to perfect an inventory." Still later, on December 7, 2004, "another delinquent notice was posted to the Respondent notifying him that the Interim Account of the Estate of Catherine Parker was past due on November 29, 2004 and that failure to file the account within twenty (20) days may result in the personal representative's removal." This apparently prompted the complainant to get new counsel, who effected the transfer of the probate matter to the District of Columbia, the situs of the decedent's property and her domicile and residence for more than a year prior to her death.

While the respondent was representing the complainant, the indebtedness charged against the decedent's estate by her neighbor increased from a principal amount of $50,000.00 to "an aggregate amount of $57,000.00 and increasing due to unpaid interest."

Having found these facts, the hearing court concluded, as follows:

### "Competency

\*    \*    \*    \*    \*    \*

"This Court finds by clear and convincing evidence that the Respondent acted incompetently when he accepted a case that required filing in a jurisdiction where he was not admitted to practice and when he failed to serve notice to Mr. Green. In *Atty. Grievance Com'n v. Thompson*, 376 Md. 500, 512, 830 A.2d 474 (2003) the Maryland Court of Appeals found that an attorney's failure to file timely reports and a pattern of mistakes that delay the closure of an estate are considered incompetent representation. The Respondent similarly delayed the closure of the estate for his client. Ms. Brashears needed an attorney familiar with the laws of the District of Columbia, and hired the Respondent based on his assertion that he could practice in the District. (Plain.Ex.1, ¶ 11). In fact, the Respondent was not licensed to practice in the

District, and it was incompetent for the Respondent to twice fail to serve Lloyd Green in a timely manner in compliance with D.C. Rule 4(m). (Plain. Ex. 1, ¶ 24, ¶ 25 & ¶ 40).

"Also, the Court of Appeals found in *Atty. Grievance Com'n v. Finnesey*, 283 Md. 541, 547, 391 A.2d 434 (1978) that neglect and inattentiveness to a client's interests constitute incompetent representation. Similarly in the case at bar, the Respondent was inattentive to his Client's interests when he opened an estate in the wrong jurisdiction, Anne Arundel County, Maryland. A cursory reading of the Death Certificate of Ms. Parker would have indicated to the Respondent that the decedent's domicil[e] was the District of Columbia, which was the proper jurisdiction to open the estate. Furthermore, Ms. Brashears informed the Respondent that her aunt's property was [in] the District of Columbia, *and* that she needed an attorney capable of moving forward in the District of Columbia. (Plain. Ex. 1, ¶ 4, ¶ 10 & ¶ 44). The Respondent's actions were sloppy at best, reckless, and indicate a lack of thoroughness and attention to details which prevented the timely closure of Ms. Parker's Estate, and therefore reach the level of incompetency.

*"Diligence*

\*　　\*　　\*　　\*　　\*　　\*

"This Court finds by clear and convincing evidence that Respondent did not act with reasonable diligence and promptness in representing a client when he failed to file the estate in the proper jurisdiction. (Plain.Ex.1, ¶ 15). *In Atty. Grievance Com'n v. Guida*, 391 Md. 33, 43, 891 A.2d 1085 (2006), the Court found a violation of Rule 1.3 when an attorney failed to file a relatively uncomplicated matter, an adoption filing. Similarly in this case it was crucial for Respondent to determine the correct jurisdiction. The evidence in this case was uncomplicated and the Respondent could have accomplished proper filing with reasonable diligence. The Respondent had documents indicating the decedent was domiciled in the District of Columbia at her death. Ms. Brashears indicated that the relevant property was in the District of Columbia, but he

still opened the estate in Maryland instead of its proper place. (Plain. Ex. 1, ¶ 4 & ¶ 26).

"Furthermore, this Court finds Rule 1.3 was violated when the Respondent *twice* failed to perfect service on Mr. Green. (Plain. Ex. 1, ¶ 26 & ¶ 34). In *Atty. Grievance Com'n v. Fezell*, 361 Md. 234, 243, 760 A.2d 1108 (2000), the Court determined that an attorney did not exercise due diligence when failing to serve a defendant in a divorce matter when the defendant's address could have easily been obtained from the client. Similarly, the Respondent *twice* failed to serve Mr. Green for the fraud and conversion case, even when Ms. Brashears gave the Respondent Mr. Green's address and told him Mr. Green was the decedent's neighbor. (Plain. Ex. 1, ¶ 26 & ¶ 4). The Respondent's repeated failures to properly serve Mr. Green, given the evidence, demonstrates a lack of reasonable diligence.

*    *    *    *    *    *

"This Court finds by clear and convincing evidence that the Respondent violated Rule 1.4(a) & (b) when he told Ms. Brashears that he was admitted to the DC Bar when he was not, and also, for failing to inform his client that he intended to seek other counsel in the District of Columbia to assist him. In *Atty. Grievance Com'n v. McLaughlin*, 372 Md. 467, 468, 813 A.2d 1145 (2002), the Court found that a violation of Rule 1.4 exists if an attorney fails to communicate, truthfully, the progress of a case to the client. (Plain; Ex. 1, ¶ 10 & ¶ 11). This Court finds that, by clear and convincing evidence, Ms. Brashears specifically asked if Respondent could handle legal issues in the District of Columbia. She interviewed and rejected other lawyers who could not practice in the District of Columbia. This Court believes Ms. Brashears was a credible witness and further finds that Respondent must have told her he could act in the District of Columbia because he was subsequently retained. (Plain. Ex. 1, ¶ 10 & ¶ 11). This Court does not believe or find credible Respondent's statement that he informed Ms. Brashears that he was not admitted to practice in the District of Columbia or that he intended

to seek assistance from another attorney to file matters for him in the District of Columbia. (Plain.Ex.1, ¶ 11).

"Also, this Court finds by clear and convincing evidence that Respondent further violated Rule 1.4(a) & (b) when he failed to tell Ms. Brashears that the *Green* case was dismissed. In *Atty. Grievance Com'n v. Finnesey,* 283 Md. 541, 547, 391 A.2d 434 (1978)[,] the Court found a violation of this communication rule when an attorney told a client a hearing was rescheduled when it was actually dismissed. Similarly, the Respondent misrepresented the status of his client's case. Ms. Brashears traveled to the Superior Court of the District of Columbia for a Conference Hearing regarding the *Green* case; however the Respondent never appeared. (Plain. Ex. 1, ¶ 29 & ¶ 30). Upon contacting the Respondent, he told Ms. Brashears that the case was continued, when in fact it was dismissed due to the Respondent's failure to serve Mr. Green a summons. (Plain. Ex. 1, ¶ 29 & ¶ 30). The Respondent's lack of candor left Ms. Brashear uninformed as to the progress of her case, and hindered her ability to make informed decisions concerning her representation.

*"Fees*

\*       \*       \*       \*       \*       \*

"This Court finds by clear and convincing evidence that the Respondent's fees were unreasonable; he charged and accepted fees when no work was performed in furtherance of the case in violation of MRPC 1.5(a)(4). In *Atty. Grievance Com'n v. McLaughlin,* 372 Md. at 499, 813 A.2d 1145 the Court determined that an attorney charged an unreasonable fee when little or no work was performed for the client. In the case at bar, the Respondent entered into a retainer agreement for $3,000.00 for twenty (20) hours at an hourly rate of $150.00. (Plain.Ex. 1, ¶ 1). Although not unreasonable on its face, the Respondent did little work to resolve his client's interests. The *Green* case was dismissed twice for lack of service, and the Respondent opened the estate of Ms. Parker in the wrong jurisdiction, which was subsequently transferred to Montgomery County, and only through the efforts of other

counsel, later retained, was the issue opened in the proper jurisdiction. (Plain.Ex.1, ¶ 40–44). The Respondent received fees, but failed to take necessary steps on the client's behalf, thereby hindering and impeding a timely resolution of the client's issues.

*"Declining: or Termination Representation*

\*     \*     \*     \*     \*     \*

"This Court finds that the Petitioner failed to prove by clear and convincing evidence that Respondent violated Rule 1.16(d). In *McLaughlin,* 372 Md. at 507, 813 A.2d 1145, an attorney was found in violation for not returning unearned fees, the court stated that an attorney has a duty to return the entirety of unearned fees under this rule. Unlike *McLaughlin,* the Respondent indicated that he returned the retainer fee and is paying an additional $7,000 for a malpractice settlement to Ms. Brashears. The Respondent has made six (6) $850.00 monthly installments to satisfy the settlement agreement, totaling $5,100.00. However, the Respondent indicated, at the hearing, that he has not made additional payments between April 2006 and the hearing date. The Respondent has returned $3,000.00 to the client representing the entire advance retainer fee.

*"Misconduct—False Statement and Misrepresentations under Oath*

\*     \*     \*     \*     \*     \*

"This Court finds the Petitioner proved by clear and convincing evidence that the Respondent misrepresented to his client the status of the *Green* case. In *Atty. Grievance Com'n v. Finnesey,* 283 Md. at 545, 391 A.2d 434[,] the Court found an attorney made misrepresentations to a client when he indicated that a hearing was rescheduled when it was actually dismissed. The facts in the case at bar are very similar. Ms. Brashears testified that she traveled to the Superior Court of the District of Columbia for a scheduled Conference Hearing, but the Respondent never arrived at the courthouse, later claiming that the meeting was cancelled. (Plain.Ex.1, ¶ 35).

Ms. Brashears then requested an update on the status of the case, and the Respondent replied that the case was continued, when it was actually dismissed. (Plain.Ex. 1, ¶ 34–37). The Respondent never revealed the dismissal to the client, nor did he indicate that he intended to re-file the case against Mr. Green. (Plain.Ex. 1, ¶ 37–40). This was a blatant misrepresentation of facts by Respondent and a failure to provide accurate information concerning a case to Respondent's client.

"This Court further finds that the Petitioner proved by clear and convincing evidence that the Respondent made misrepresentations to the Superior Court of the District of Columbia in his Motion to Appear Pro Hac Vice. Respondent knowingly and falsely stated that there were no disciplinary complaints pending against him and did so under oath and/or affirmation. In *Atty. Grievance Com'n v. Myers,* 333 Md. 440, 449, 635 A.2d 1315 (1994), the Court of Appeals disbarred an attorney for lying under oath, before a judge, claiming he had no traffic violations for thirty years. The Court commented that '[c]andor and truthfulness are two of the most important character traits of a lawyer.' *Id.* The Respondent, in this case, admitted that he knew of a pending disciplinary action in Maryland *before* filing his *pro hac vice* motion. Therefore, this was an egregious false statement in his application to the Superior Court of the District of Columbia.

"Evidence presented at trial showed that on February 2,2003 a letter was sent by the Attorney Grievance Commission detailing a complaint from Daryl Lament Torain. (Plain. Ex. 1 Attachment 1). In addition, on March 9, 2003, Respondent sent a letter to the Attorney Grievance Commission denying the allegations, and on March 29, 2003, Respondent addressed the complaints of Mr. Torain in writing. (Plain. Ex. 1, Att. 2 & 3). Clearly, on April 4, 2003, the Respondent filed his Application for Admission *Pro Hac Vice* knowing of the Torain allegation pending with Attorney Grievance Commission. (Plain.Ex.1, ¶ 23).

"Petitioner presented evidence of statements contained in the application where the Respondent clearly indicated that

there were no disciplinary complaints pending against him for violation of the rules of the courts for Maryland or New Jersey. (Plain. Ex. 1, Att. 7, see application attached). But the Torain Complaint was pending, and the Respondent had just replied to that complaint days before filing his *pro hac vice* application. The Respondent clearly misrepresented this fact to the Superior Court of the District of Columbia. (Plain. Ex.1, ¶ 25). Respondent's testimony at trial explaining his actions lack credibility, candor and truthfulness.

*"Conduct Prejudicial to Justice*
\* \* \* \* \* \*

"This Court finds by clear and convincing evidence that the Respondent's actions were prejudicial to the administration of justice. 'Behavior that may seriously impair public confidence in the entire profession, without extenuating circumstances, may be conduct prejudicial to the administration of justice.' *Atty. Grievance Com'n v. Reinhardt*, 391 Md. 209, 222, 892 A.2d 533 (2006). The Respondent's dilatory and incompetent representation, and his failure to act to preserve the Estate of Catherine Parker, harmed his client's interests and created a further indebtedness against the decedent's property from the principal amount of $50,000.00 to an aggregate amount of $57,000.00 and growing with unpaid interest. Plain.Ex. 1, ¶ (45). These actions impaired the client's confidence, and the public's confidence in the entire legal profession, and as such are a prejudicial to justice and violate Rule 8.4(d).

"This Court finds by clear and convincing evidence that the Respondent prejudiced the administration of justice when he made misrepresentations both to his client and while under oath. 'Failure to represent a client in an adequate manner and lying to a client constitute a violation of Rule 8.4(d)[.]' *Atty. Grievance Comm'n v. Reinhardt*, 391 Md. at 222, 892 A.2d 533. The Respondent attempted to cover mistakes when he misrepresented to his client the status of the *Green* [case] and the Respondent made misrepresentations under oath to the Superior Court of the District of Columbia on his application to appear *pro hac vice*. (Plain. Ex. 1, ¶ 19 & ¶ 30).

These actions impair the public's confidence in the entire legal profession, and as such are prejudicial to [the administration of] justice and violate Rule 8.4(d).

\*     \*     \*     \*     \*     \*

"This Court finds that the Petitioner has proven by clear and convincing evidence that the Respondent violated the following rules thus causing a violation of Rule 8.4(a): 1.1, 1.3, 1.4(a) & (b), 1.5(a), and 8.4(c) & (d).  Rule 8.4(a) is violated in regards to the attorney's conduct concerning other charges of the MRPC. *See Atty. Grievance Com'n v. Calhoun,* 391 Md. 532, 570, 894 A.2d 518 (2006).  The Respondent was required to provide Ms. Brashears with competent, diligent representation, which he did not do.  The Respondent did not communicate to his client necessary information so she could make appropriate decisions concerning representation.  The Respondent failed to perform legal services of any reasonable value, but retained a fee.  Furthermore, Respondent intentionally made misrepresentations to his client and the Superior Court of the District of Columbia, and engaged in conduct prejudicial to the administration of justice.  However, this Court finds that the Respondent did not technically violate Rule 1.16(d), because he returned all unearned advance fees to ... Ms. Brashears after the client retained new counsel."

Having determined that the respondent violated MRPC Rules 1.1, 1.3, 1.4(a) & (b), 1.5(a) and 8.4(a), (c) and (d), the hearing court observed:

"Many of the Respondent's violations of the MRPC could have been avoided if he would have admitted to his client his lack of experience and/or qualifications.  With each mistake the Respondent reached the point of falsehoods and misrepresentations which were identified in the end.  This is similar to the facts in *Atty. Grievance Com'n v. Finnesey,* 283 Md. at 546, 391 A.2d 434, where an attorney did not intend to cheat his client, but deliberately lied to cover up his neglect and mistakes by assuring the client that the case was running smoothly when, in fact, it was rapidly deteriorating."

■ Neither the petitioner nor the respondent has taken exceptions from the hearing court's findings of fact or conclusions of law. Therefore, the findings of fact are treated as established for purposes of determining the appropriate sanction. *Attorney Griev. Com'n v. Sweitzer,* 395 Md. 586, 594–95, 911 A.2d 440, 445–46 (2006); *Attorney Griev. Com'n v. Logan,* 390 Md. 313, 319, 888 A.2d 359, 363 (2005); Rule 16–759(b)(2)(A).[10] Moreover, reviewing the hearing court's conclusions of law *de novo,* as we must, *see* Rule 16–759(b)(1); [11] *Logan, supra,* satisfies us that the conclusions of law follow from, and are supported by, the court's factual findings, which, as we have seen, have been established.

■ Turning to the sanction, we note that the respondent did not file a recommendation for sanction. He appeared at oral argument, however, by counsel, who, while expressly acknowledging the misconduct, the severity of which he did not minimize, urged the court to impose a sanction short of disbarment. The petitioner, on the other hand, filed *Petitioner's Recommendation for Sanction,* in which it urges the respondent's disbarment. In addition to emphasizing that the hearing court found "multiple instances of the Respondent's dishonest conduct," of the kind and magnitude for which this Court has, in the past ordered disbarment, citing *Attorney Griev. Com'n v. Pennington,* 387 Md. 565, 597, 876 A.2d 642, 661 (2005) and *Attorney Griev. Com'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001), the petitioner reminds us that the respondent has a prior disciplinary history, a significant factor to be taken into account. That the respondent's prior discipline is an indefinite suspension, imposed just this year and which still is in effect, *see Attorney Griev. Com'n v.*

---

**10.** Maryland Rule 16–759(b)(2)(A) provides:

"(A) If No Exceptions Are Filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any."

**11.** Maryland Rule 16–759(b)(1) provides:

"(1) *Conclusions of Law.* The Court of Appeals shall review de novo the circuit court judge's conclusions of law."

*Ward,* 394 Md. 1, 904 A.2d 477(2006), buttresses its disbarment recommendation, the petitioner maintains.

It is well settled that "[d]isbarment ordinarily should be the sanction for intentional dishonest conduct." *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001). *See Attorney Griev. Com'n v. Pennington,* 387 Md. 565, 597, 876 A.2d 642, 660–61 (2005); *Attorney Griev. Com'n v. Lane,* 367 Md. 633, 646, 790 A.2d 621, 628 (2002). This is so, because "[u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Vanderlinde,* 364 Md. at 418, 773 A.2d at 488. Thus, like in the case of a misappropriation of entrusted funds, *see Attorney Griev. Com'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991), in the absence of compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment.

There have been no compelling extenuating circumstances shown in this case. In fact, the hearing court expressly and unmistakably rejected the respondent's proffered mitigation. Moreover, we agree with the petitioner that the respondent's prior disciplinary history supports its recommended sanction. In the recent case in which he was indefinitely suspended from the practice of law, the respondent was found to have violated some of the same rules he has been found in this case to have violated: Rules 1.1, 1.3, 1.4, and 8.4(d).

Accordingly, we adopt the petitioner's recommendation. Disbarment is the appropriate sanction in this case.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST KENNETH S. WARD.