904 A.2d 477

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Kenneth S. WARD.**

**Misc. AG No. 47, Sept. Term, 2004.**

Court of Appeals of Maryland.

Aug. 2, 2006.

2

4

John C. Broderick, Asst. Bar Counsel, Atty. Grievance Com'n of Maryland, for petitioner.

Edward Smith, Jr., Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

The Attorney Grievance Commission, through Bar Counsel ("Petitioner") and in conformance with Maryland Rule 16–751 [1], filed a Petition for Disciplinary or Remedial Action against Respondent, Kenneth Stanford Ward, alleging violations of the Maryland Rules of Professional Conduct (MRPC) 1.1 (Competence) [2], 1.2(a), (b), and (c) (Scope of Representation) [3], 1.3 (Diligence) [4], 1.4(a) and (b) (Communica-

---

1. Maryland Rule 16–751, as relevant, provides:

   (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Rule 1.1 provides:

   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. Rule 1.2(a), (b) and (c) provides in relevant part:

   (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation, and, when appropriate, shall consult with the client as to the means by which they are to be pursued.... A lawyer shall abide by a client's decision whether settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

tion) [5], 1.5(a) (Fees) [6], 3.3(a)(1) (Candor Toward the Tribunal) [7], 5.3(c) (Responsibilities Regarding Non Lawyer Assistants) [8], 8.1(a) and (b) (Bar Admission and Disciplinary 8.1(a) and (b)

---

(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

(c) A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

4. Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

5. Rule 1.4 provides:

(a) A lawyer shall:

* * * *

(2) keep a client reasonably informed about the status of a matter; and

(3)promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

6. Rule 1.5 relating to attorney fees provides, in relevant part:

(a) A lawyer shall not ... charge or collect an unreasonable fee....
The factors to be considered in determining the reasonableness of a fee include ...

* * * *

(8) whether the fee is fixed or contingent.

7. Rule 3.3 provides, in relevant part:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

8. Rule 5.3(c) provides:

With respect to a non-lawyer employed or retained by or associated with a lawyer:

* * * *

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner ... in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

**8**

(Bar Admission and Disciplinary Matters) [9], and 8.4(a), (c), and (d) (Misconduct) [10]. We referred the petition to Judge Wanda Keyes Heard of the Circuit Court for Baltimore City, to conduct a hearing and submit to this Court her proposed findings of fact and conclusions of law.

On July 5 and 7, 2005, Judge Heard conducted hearings and, on August 12, 2005, submitted her findings and conclusions. She concluded that Respondent had violated MRPC 1.1, 1.3, 1.4, 1.5, 3.3(a)(1), 5.3(a), 8.4 generally, and 8.4(d) and concluded that Respondent had not violated Rule 8.1(a). She made no specific findings as to MRPC 8.4(a) and (c). Specifically, as to the complaint filed by Albert Jenkins, Judge Heard determined that Respondent violated MRPC 1.5, 5.3(a) and did not violate Rule 1.1. As to Rule 8.4 and the Jenkins complaint, she determined that Respondent essentially violated the spirit of the Rule in regards to his inadequate supervision of his secretary in obtaining the client's notarized signature. Judge Heard, however, made no specific findings as to subsections (a), (c) or (d) of Rule 8.4. As to the complaint

---

**9.** Rule 8.1 provides:

Bar Admission and Disciplinary Matters.
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement or material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**10.** Rule 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice. . . .

filed by Daryl Torain, Judge Heard found that Respondent violated MRPC 1.1, 1.3, 1.4, 3.3(a)(1), and 8.4(d).

Bar Counsel filed four exceptions, stating that the hearing judge 1) abused her discretion in granting Respondent's motion to vacate the Order of Default; 2) failed to find a violation of Rule 1.1 regarding Mr. Jenkins's release on bail; 3) failed to grant petitioner's request to compel discovery; and 4) erred in finding that Respondent did not violate Rule 8.1(a) in his representation of Mr. Torain. Respondent also filed exceptions asserting that the hearing judge erred in finding that Rules 1.5, 5.3(c), and 8.4 had been violated with respect to Respondent's representation of Mr. Jenkins. In addition, Respondent contended, as to Mr. Torain, that the hearing judge erred in finding that Respondent had violated MRPC 3.3(a)(1) and 8.4.

We summarize Judge Heard's Findings of Fact and Conclusions of Law as follows:

### Complaint of Albert Jenkins

Mr. Jenkins, who was incarcerated at the Montgomery County Detention Center, retained Respondent on August 6, 2003, to arrange bail for him and his friend, Thomas Shea. Mr. Jenkins executed a retainer agreement and also a Power of Attorney for Respondent to access Mr. Jenkins's Chevy Chase bank account. The Power of Attorney required notarization and, since Respondent was not a notary, he requested that his secretary, Ms. Tyner, notarize the document outside the presence of Mr. Jenkins. Ms. Tyner was not coerced into notarizing the document but did so using her own notarial discretion. Because Respondent was aware that Ms. Tyner was notarizing a document with the signatory absent, Respondent, as her supervisor, should have taken action to disallow it. Respondent's failure to so do is a violation of Rules 5.3(c) and 8.4.

Mr. Jenkins gave Respondent permission, using the Power of Attorney, to withdraw $20,000 from Mr. Jenkins's bank account. The $20,000 was meant to pay for Respon-

dent's flat fee of $5,000, $15,000 to secure Mr. Jenkins's release, and $500 for Mr. Shea's release. On August 7, 2003, Respondent withdrew $20,000 from Mr. Jenkins's account and obtained a $15,000 cashiers check for Main Street Bail Bonds. When Respondent realized that he would not have the $500 needed for Mr. Shea's release, Respondent, on August 8, 2003, redeposited the $15,000 back into Mr. Jenkins's account. Respondent then withdrew $2,000 in the form of a cashier's check and paid Main Street Bail Bonds for both Mr. Jenkins's and Mr. Shea's release.

Mr. Jenkins was released on or about August 10, 2003. He discharged Respondent and requested that Respondent provide a statement for the retainer and refund sums not earned. In response to this request, Respondent sent Mr. Jenkins a statement, dated September 20, 2003, showing an additional $585.00 due over and above the $5,000 flat fee agreement.

Respondent violated Rule 1.4 when he did not advise Mr. Jenkins of the problems he was having in arranging the bonds for his and Mr. Shea's release. Respondent did not violate Rule 1.1 because, even though he did not follow Mr. Jenkins's exact instructions, Respondent did accomplish the goal for which he was retained. Respondent's statement to collect $585.00 in excess of the flat fee agreement he had with Mr. Jenkins is a violation of Rule 1.5.

### Complaint of Daryl Lamont Torain

On January 7, 2002, Mr. Torain retained Respondent to represent him in a District Court action brought by Maryland Apartment, Inc. involving a landlord-tenant matter. The trial was initially scheduled for February 11, 2002, but was postponed to May 6, 2002. Mr. Torain was notified of the initial trial date by the court; however, after Respondent entered his appearance in the case on January 28, 2002, Mr. Torain was not notified by the court of the postponement to May 6. Respondent requested a continuance of the case and notified Mr. Torain of his request by

letter dated April 29, 2002, but also advised Mr. Torain that he should appear May 6. Even though Respondent did not receive a continuance of the May 6 date, he failed to communicate this to Mr. Torain. Since Respondent had to represent another client, Tyree Woodson, in the Circuit Court for Baltimore City on May 6, 2002, he arranged for a stand-in attorney to appear in District Court for Mr. Torain. Respondent also failed to communicate this arrangement to Mr. Torain. Mr. Torain did not show up on May 6, and, in his absence, Maryland Apartment, Inc., was granted a default judgment of $1,511.03. Mr. Torain only became aware of the judgment when he received a collection notice from Maryland Apartment, Inc.

The default judgment against Mr. Torain was entered on May 6, 2002. Respondent filed a Motion to Vacate Judgment on October 24, 2002, incorrectly stating that Mr. Torain was in court on May 6. The Motion was denied because it was not timely filed. Respondent told Mr. Torain that he had followed up his April 29, 2002, letter to the court for a continuance with a telephone call on May 5, 2002, to the clerk at the District Court and was told that Mr. Torain's case had been continued.

In his complaint to Petitioner, Mr. Torain charged that he had asked Respondent for copies of pleadings filed in his case but that Respondent did not provide them. In addition, Mr. Torain requested Respondent to refund the retainer fee of $300 and to pay for the default judgment. Respondent has paid Mr. Torain $1,000 as of the date of Bar Counsel's petition.

Respondent was notified by letter dated February 12, 2003, of the pending complaints against him and his response was due within ten days. Respondent requested a 15–day extension on March 8, 2003, in order that he could serve as counsel for another client in a jury trial. A provisional extension was granted on March 12, 2003, provided that Respondent provide the case number and information on the duration of the jury trial. Instead of providing the requested information, Respondent answered

Petitioner's initial letter and attached a copy of the Motion to Vacate Judgment in Mr. Torain's case which incorrectly stated that Mr. Torain was in court on May 6. Petitioner further expressed concern to Respondent regarding the discrepancy that Respondent was claiming to believe that Mr. Torain's case had been postponed but had, nevertheless, sent a stand-in attorney for the scheduled trial on May 6.

Though Respondent was accused of violating MRPC Rule 8.1, in the Petition filed in this case which states: "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6." Specifically, the Petition for Disciplinary Action stated that Respondent made misrepresentations to the investigator for Bar Counsel regarding Respondent's representation of Mr. Torain. Petitioner has elected to abandon the 8.1(b) claim against Respondent.

This Court does not find [that Respondent violated Rule 8.1(a) or] that the Petitioner has proven by clear and convincing evidence any false statements of material fact made by Respondent. Petitioner did, however, present several instances of sloppiness and human errors in the documentation provided by the Respondent. The Court of Appeals has held that inexperience can be considered as a mitigating factor in determining sanctions of an attorney. *Attorney Grievance Commission v. O'Neill*, 285 Md. 52, 55–57, 400 A.2d 415 (1979).

Respondent is accused of violating Rule 8.4 of the MRPC, which states; "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do

so through the acts of another; (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice." Considering the totality of the conduct, this Rule was violated. By violating MRPC Rules 1.1, 1.3, 1.4, 3.3(a)(1), Respondent has violated the overall objective and purpose of MRPC 8.4. Particularly in the case of Mr. Torain, who was entitled to competent, diligent representation by the Respondent. Respondent failed to provide that representation which resulted in a judgment being entered. Respondent found a substitute attorney when he was unable to appear in court, however, since he did not inform or communicate with his client effectively. His professional conduct and representation was totally ineffective and prejudicial to the administration of justice.

Specifically, Respondent's incompetent representation resulted in the default judgment to be entered against Mr. Torain. MRPC Rule 8.4(d) states that: "[I]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." In an effort to repay Mr. Torain for the default judgment, Respondent has given Mr. Torain a certified check for $1,000.00, which represents over fifty percent of the default judgment and refund of the retainer agreement. This Court assumes that Respondent will refund Mr. Torain all monies and make him whole with regard to the balance of the judgment due and owing. Consequently, Respondent failed to provide competent representation for Mr. Torain in the matter at bar.

Respondent, however, did act competently in the representation of Mr. Jenkins. Although Respondent was inexperienced regarding securing release from jail either through posting bond or use of a bail bondsman, Respondent did secure Mr. Jenkins'[s] release from the Montgomery County Detention Center. Consequently, Respondent did not violate MRPC Rule 1.1 and thereby did not violate MRPC Rule 8.4.[11]

---

11. Judge Heard's discussion of her legal conclusions with respect to Mr. Jenkins' claim as part of her discussion of her legal conclusions

## CONCLUSION

For the reasons stated above, this Court finds by clear and convincing evidence that Respondent's overall conduct during the course of his representation of Mr. Albert Jenkins violated Rule [1.5,] 5.3(a) and 8.4 only.[12]

Additionally, this Court finds by clear and convincing evidence that Respondent violated Rules 1.1, 1.3, 1.4, 3.3(a)(1), and 8.4[ (d) ][13] in the course of his representation of Mr. Daryl Torain due primarily to lack of experience and competency in maintaining coverage for conflicting trial dates.

Respondent's behavior in not properly following up with the District Court to assure that Mr. Torain's case would be continued, not providing diligent representation when he did not inform Mr. Torain of the status of the court date, and

---

with respect to Mr. Torain's claim is confusing. Notwithstanding the confusion, as we interpret the last paragraph of her summary of the legal conclusions for her decision, it appears that Judge Heard found that Respondent did not violate Rules 1.1 and 8.4 as to the issue of competency. But, as to the notary issue, Respondent violated Rule 8.4(d).

12. Judge Heard incorrectly stated in her conclusions that Respondent "only" violated Rules 5.3(a) and 8.4 when representing Mr. Jenkins. In the section expressly pertaining to Mr. Jenkins's conclusions of law, the judge found that Respondent also violated Rule 1.5 when he charged Mr. Jenkins more than the agreed upon flat fee. Accordingly, Respondent violated, as to his representation of Mr. Jenkins, Rules 1.5, 5.3(a) and 8.4(d).

Moreover, the hearing judge failed to specify which subsection of Rule 8.4 the Respondent violated. The judge included MRPC 8.4(a), (c), and (d) in her general discussion of the notary issue. Based upon our review of the judge's conclusions of law and the evidence, we hold that she determined that Respondent clearly violated Rule 8.4(d), because Respondent's conduct was "prejudicial to the administration of justice."

13. Concerning Mr. Torain, Judge Heard failed to expressly specify which subsection of Rule 8.4 was violated. The judge stated that the overall objective and purpose of Rule 8.4(a), (c), and (d) were violated. She opined that although Respondent violated the overall objective and purpose of MRPC 8.4, Respondent's "conduct and representation [w]as totally ineffective and prejudicial to the administration of justice" which we interpret to be a violation of Rule 8.4(d).

not filing the Motion to Vacate Judgment against Mr. Torain timely, are violations of Rules 1.1, 1.3, and 1.4. Respondent's statement that his client, Mr. Torain, was present in court on May 6 was a false statement and, therefore, Respondent has violated Rule 3.3(a)(1). By virtue of his violating Rules 1.1, 1.3, 1.4, and 3.3(a)(1), Respondent has violated the corresponding sections of Rule 8.4.

## STANDARD OF REVIEW

In *Att'y Grievance Comm'n v. Cherry–Mahoi*, 388 Md. 124, 879 A.2d 58 (2005), we maintained:

In proceedings involving attorney discipline, this Court has original and complete jurisdiction and conducts an independent review of the record. In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. As to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, "our consideration is essentially *de novo.*"

*Id.* at 152–53, 849 A.2d at 76. (Citations omitted.)

We, however,

"must keep in mind that the findings of the [hearing] judge are *prima facie* correct and will not be disturbed unless clearly erroneous." [*Att'y Grievance Comm'n v.*] *Glenn,* 341 Md. [448,] 470, 671 A.2d [463,] 474 [ (1996) ] *See Att'y Grievance Comm'n v. Kemp,* 303 Md. 664, 674, 496 A.2d 672, 677 (1985); *Att'y Grievance Comm'n v. Collins,* 295 Md. 532, 548, 457 A.2d 1134, 1142 (1983) *Att'y Grievance Comm'n v. Kahn,* 290 Md. 654, 678, 431 A.2d 1336, 1349 (1981). We note that the hearing judge " 'may elect to pick and choose which evidence to rely upon,' " ... for she or he "is the best position to assess first hand a witness's credibility." ... Therefore, we will not tamper with [the] judge['s] ... factual findings if they are grounded in clear and convincing evidence.

*Att'y Grievance Comm'n v. Harris,* 366 Md. 376, 388–89, 784 A.2d 516, 523 (2001) (citations omitted) (alterations in original) (alterations added).

In attorney grievance cases, the judge is required to apply the clear and convincing standard of proof when weighing the evidence. *Id.* at 389, 784 A.2d at 523–24. The clear and convincing standard of proof lies somewhere between a preponderance of evidence standard, which is generally applied to civil cases, and beyond a reasonable doubt standard, which is applied to most crimes. *Id.,* 784 A.2d at 523.

## ANALYSIS

### *PETITIONER'S EXCEPTIONS*

#### *Motion to Vacate*

On February 14, 2005, Petitioner filed a motion for a default judgment against Respondent for failing to respond to the Petition for Disciplinary Action. On March 22, 2005, a default order was entered. On April 4, 2005, thirteen days after the order of default, Respondent filed a Motion to Vacate Order of Default. On April 19, 2005, Judge Heard issued a Memorandum and Order granting Respondent's motion to vacate the default judgment.

Petitioner's first exception states that the hearing court erred when it granted Respondent's Motion to Vacate Order of Default. Petitioner argues that pursuant to 2–613(e) Respondent failed to 1) provide a substantial and sufficient basis for an actual controversy as to the merits of the action, and 2) provide a reasonable explanation for his failure to plead in a a timely manner. In other words, Petitioner maintains that Respondent failed to comply with Rule 2–613(e) in that his motion to vacate the default order was insufficient and, as such, "a mere conclusory statement that merely tracks the language of the rule is insufficient." *Carter v. Harris,* 312 Md. 371, 376, 539 A.2d 1127, 1129–30 (1988). Petitioner, however, does not claim how it was prejudiced by Respon-

dent's failure to respond timely to the Petition for Disciplinary Action.

Respondent contended in his motion to vacate the order of default essentially that:

5.    The Respondent failed to respond because he simply did not have funds for counsel. The failure to plead was occasioned was not intentional nor deliberate [sic], but episodic and conditional. He has now secured counsel who has fully answered the Petition.

6.    Respondent's legal basis for the defense to the claim clearly centers on the requirements for proof by Bar Counsel of the alleged violations. . . .

7.    The Respondent challenges all of the factual allegations set forth in the Petition for Disciplinary Action and demands strict proof.

8.    The Respondent's ability to earn a living is at stake in the case. He should be entitled to fully defend himself against the charges brought in this matter.

The hearing court found that pursuant to Rule 2–613(d), Respondent's Motion to Vacate Order of Default was timely and subsequently granted the motion. According to Judge Heard, Respondent had

den[ied] all of the allegations set forth in the Petition and demand[ed] direct proof. This direct proof can only be satisfied by the examination of documents and evaluating the credibility of the witnesses testifying against him. This, in turn, can only be accomplished by holding an evidentiary hearing.

\* \* \* \*

The Respondent admits no liability and vehemently denies these allegations. The bulk of the evidence against [him] appears to be based largely on the testimony of witnesses. As a result this Court finds that Respondent would be prejudiced and justice would be denied if his means to earn

a living were taken away without an opportunity to confront these witnesses and dispel their allegations at a hearing. (Citations omitted.)

Maryland Rule 2–613(d) and (e) provides:

(d) **Motion by Defendant.** The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(e) **Disposition of motion.** If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

Petitioner cites several cases in particular, *Att'y Grievance Comm'n v. Middleton,* 360 Md. 34, 756 A.2d 565 (2000),[14] and *Banegura v. Taylor,* 312 Md. 609, 541 A.2d 969 (1988) to support its argument. Before discussing *Banegura,* we shall

---

14. In *Middleton,* Petitioner filed a Petition for Disciplinary Action alleging attorney misconduct. *Middleton,* 360 Md. at 36, 756 A.2d at 566. The hearing court granted Petitioner's order of default when Middleton failed to respond. *Id.* at 37, 756 A.2d at 567. Middleton did not respond until the day of the hearing in this Court, stating that he was unaware of the default judgment due to an address change. This Court held that Middleton was not entitled to relief from a default judgment. *Id.* at 49, 756 A.2d at 573. We explained that Middleton had "no one to blame but himself if the notice of the order of default was not received" because he was obliged and failed to change his address with the court. *Id.* at 46, 756 A.2d at 572. This Court reviewed whether Middleton's defense was meritorious and upon reviewing the evidence held that sufficient evidence existed for the court to find that Middleton's actions resulted in attorney misconduct and incompetence. *Id.* at 48–49, 756 A.2d at 573–74.

*Middleton* is distinguishable from the case at hand primarily because there was no justification for Middleton's failure to respond timely and inform the court of his change of address.

In contrast, in the case *sub judice,* the hearing court found that Respondent's misconduct was the result of his inexperience and disorganization. Although we do not condone Respondent's actions, his actions lack the same level and depth of misconduct as evidenced in *Middleton.* In addition, the evidence against Middleton was overwhelming and essentially undisputed. Thus, there was no actual controversy about the merits of the charges of misconduct filed against Middleton.

review several relevant cases that discuss vacating an order of default.

The Court of Special Appeals in *Holly Hall Publications, Inc. v. County Banking and Trust Co.*, 147 Md.App. 251, 807 A.2d 1201 (2002) discussed at length whether it was equitable to excuse the failure to plead and whether evidence existed to determine the circumstances of when or whether to vacate an order of default. *Id.* at 261–67, 807 A.2d at 1207–10 (and cases cited therein). In *Holly Hall* the intermediate appellate court explained that " 'in Maryland, a default judgment is considered more akin to an admission of liability than to a punitive sanction.' " *Id.* at 261–62, 807 A.2d at 1207 (quoting *Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 653 A.2d 934 (1995) (and cases cited therein)). The Court of Special Appeals stated that,

> [u]nder Maryland law, a default judgment is not meant to be a punitive measure that penalizes a party for breaching a regulation. In distinguishing Maryland from other jurisdictions that enter default judgments as a sanction for procedural violations, the Court of Appeals . . . stated that "Maryland law . . . does not weigh the balance so heavily against the truth seeking function of adversary litigation."

*Id.* at 262, 807 A.2d at 1207 (alterations added) (alteration in the original) (citations omitted). Further, the intermediate appellate court held that

> a close look at cases involving motions to vacate default judgments confirms that Maryland courts ordinarily exercise their discretion in favor of a defaulting party if the party establishes that there is a meritorious defense and shows that its fault was excusable. . . . In the cases brought to the attention of the Court where the Maryland Court of Appeals upheld a trial court's refusal to vacate a default judgment, the defaulting party either lacked a meritorious defense, or the trial court's discretion was confined under the old Maryland default judgment rule.

*Id.* at 263, 807 A.2d at 1208 (citations omitted) (and cases cited therein).

█ In the interest of justice, this Court reviews a hearing court's decision to vacate a default order liberally because "the Maryland Rules and case law contain a preference for a determination of claims on their merits; they do not favor imposition of the ultimate sanction absent clear support." *Id.* at 266, 807 A.2d 1201. *See Flynn v. May,* 157 Md.App. 389, 403, 852 A.2d 963, 971 (2004) (explaining that the concept that equitableness or fairness comes before technical rules, is a "philosophy . . . not to be narrowly or stingily caged" regarding vacating a default order).

█ Therefore, a hearing court has "broad general discretion" to determine whether to grant or deny a motion to vacate an order of default. *Holly Hall,* 147 Md.App. at 260, 807 A.2d at 1207 (citing *Banegura v. Taylor,* 312 Md. 609, 619, 541 A.2d 969, 974 (1988) ("A trial judge possesses very broad discretion to modify [or grant or deny] an interlocutory order where that action is in the interest of justice.") (citations omitted)). *See Scully v. Tauber,* 138 Md.App. 423, 771 A.2d 550 (2001) ("[A] motions judge is accorded considerable discretion in deciding to set aside the grant of a default judgment."); *Bliss v. Wiatrowski,* 125 Md.App. 258, 264, 724 A.2d 1264, 1266–67 (1999) (noting that the trial judge granted a motion to vacate order of default, after the 30–day deadline, when the court received a letter from the defendant which stated that he was interested in participating in the case).

*Substantial and Sufficient Basis of an Actual
Controversy as to the Merits*

█ Petitioner argues that Respondent failed to provide a detailed statement as to the merits of his defense. Relying on *Carter, supra,* Petitioner contends that "motions that fail to state the legal and factual basis for a defense on the merits, or that state no more than conclusory allegations concerning a defense, are inadequate, because they afford the court no real information upon which to make its finding."

We must resolve whether Judge Heard erred when she granted Respondent's motion to vacate the default order even

if the stated legal and factual basis was insufficient. We conclude that she did not. We explain, noting that Petitioner relies on our decision in *Banegura*.

In *Banegura*, after an entry of the order of default was filed, sixty-seven (67) days later and after a jury trial to determine damages, Banegura filed a motion to strike the default order. *Banegura*, 312 Md. at 614, 541 A.2d at 971. The trial judge denied Banegura's motion. *Id.* at 620, 541 A.2d at 974. Later, a motion to modify the request to strike was filed, which also was denied because it failed to provide any factual or legal basis for a defense or state that any defense existed. *Id.* at 620, 541 A.2d at 974. The Court of Special Appeals dismissed the appeal as to the judgment by default. We granted certiorari and held that "[a] trial judge possesses very broad discretion to modify an interlocutory order where that action is in the interest of justice." *Id.* at 619, 541 A.2d at 974. Although a motion to vacate an order for default must include a legal and factual basis for the defense claimed, the

> failure to comply with the mandate of this rule may not deprive the trial judge of the right to grant the motion, but it may furnish justification of the denial of it. . . . We do not suggest that [the j]udge could not have granted the motion—rather, we make clear that it was well within his discretion to deny it even if it had been timely filed. If Banegura cannot succeed in his challenge to the trial judge's exercise of discretion . . . he obviously cannot succeed in his appeal from an action over which the trial judge had very wide discretion.

*Id.* at 620, 541 A.2d at 974–75 (1988) (citations omitted) (alterations added).

We do not disagree with Petitioner that Respondent could have done a better job of complying with the first prong of Rule 2–613(d).[15] We also recognize that Judge Heard could

---

15. In pertinent part, Respondent was required to "state . . . the legal and factual basis for the defense of the claim." Md. Rule 2–613(d).

have denied the motion to vacate for failure to comply with Rule 2–613(d) and (e) because the rules require that "the motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim." We agree that Respondent failed to provide detailed legal and factual sufficiencies of his case, we are mindful, however, that "[t]echnicality, while important, should not be elevated to an exalted status." *Holly Hall*, 147 Md.App. at 266, 807 A.2d at 1210. Respondent's motion contained the legal basis for his argument. Essentially, Respondent demanded proof that he violated the MRPC, and challenged the validity of Bar Counsel's factual allegations. Moreover, Rule 2–613(e) requires that "if the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order." Given that there was an adequate reason for Respondent's failure to plead, we cannot say that, in the interest of justice, that the hearing court abused its discretion in requiring the case to proceed on the merits rather than pursuant to a default order.

### Equitable To Excuse Failure To Plead

The second prong of the court's analysis in deciding whether to vacate the default order requires that a court determine whether "it is equitable to excuse the failure to plead."

In *Eshelman Motors Corp. v. Scheftel*, 231 Md. 300, 301, 189 A.2d 818, 819 (1963), the defendant, an insolvent corporation, asserted in its motion to set aside a default judgment, filed thirteen days after the entry of the default order, that the delay was caused by a failure to financially secure counsel to assist in preparing a defense. The trial judge denied defendant's motion. *Id.* at 301, 189 A.2d at 819. This Court held that the trial court abused its discretion when the court denied the motion to vacate and that the opposing party did not claim to be prejudiced by the court's vacating the default order. *Id.* We held that the grant or denial of the motion is within the trial court's discretion, "[b]ut it is a discretion which must be

exercised liberally lest technicality triumph over justice." *Id.* at 301, 189 A.2d at 818 (citation omitted).

■■ In the case *sub judice,* the hearing judge concluded that, in Respondent's motion to vacate he "state[d] in his defense that he did not have the funds to hire counsel and as a result, was unable to answer the [p]etition ... in a timely manner. As soon as he obtained counsel, he took steps to answer the petition." Based upon our review of the evidence, we hold that Judge Heard's finding that Respondent's explanation that he was unable to financially secure counsel was a reasonable explanation and was not clearly erroneous. Petitioner has not claimed that it was in anyway prejudiced by Respondent's untimely response. Even if it had made such a contention, Judge Heard was in the best position to assess Respondent's credibility. Implicit in the hearing judge's analysis, she determined that there was an actual controversy as to the merits of the action. We cannot say that the hearing judge abused her discretion in vacating the order of default.

### Maryland Rule of Professional Conduct 1.1

■ Petitioner's second exception was that the hearing court erred in its finding that Respondent did not violate Rule 1.1 when securing the release of Mr. Jenkins upon posting the bond. Rule 1.1 states that "[a] lawyer shall provide competent representation to a client." Respondent, with authority pursuant to a power of attorney, withdrew $20,000 from Mr. Jenkins's bank account. He was instructed to pay $15,000 for Mr. Jenkins's bail and $500 for Shea's bail (Jenkins's cell mate). Petitioner argues that Respondent withdrew the money and without Mr. Jenkins's consent or authorization "paid $2000 to Main Street Bail Bonds as their fee to post bail" for which Mr. Jenkins was charged a ten percent (10%) premium. Petitioner contends that Mr. Jenkins could have posted his own bond because he had equity in his home which he could have used to secure the bond.

On the issue of paying Main Street Bail Bonds instead of paying cash to post Mr. Jenkins's bond, the hearing judge found that Respondent's actions were reasonable:

> Though it may be accurate that Respondent lacked prior experience in posting bond or employing a bail bondsman, Respondent's actions to effectuate and arrange the tasks assigned by his client [were] reasonable. When faced with the available alternative means, it was not unreasonable for Respondent to use those means. In fact, this Court finds that the means utilized by Respondent was not only fair and reasonable but within his authority as delineated by the Power of Attorney granted to him by his client, Mr. Jenkins, and the written instructions [16].... Respondent accomplished the goal ... as the client requested. Clearly, the final action taken by Respondent differed from [Mr. Jenkins's] instructions ... this Court finds that Petitioner has failed to proved by clear and convincing evidence that Respondent acted incompetently by his failure to convey to Mr. Jenkins the details surrounding his release from the ... [d]etention [c]enter. Despite not following Mr. Jen-

---

16. Petitioner argues in its exceptions that the hearing judge's finding pertaining to Rule 1.1 was "an abuse of discretion and clearly erroneous" for a number of reasons including the fact that "Mr. Jenkins'[s] execution of the Power of Attorney was done without the benefit of a proper notarial attestation." Petitioner argues that the power of attorney was not valid because Respondent's secretary, Ms. Tyner, a notary, attested to Mr. Jenkins'[s] signature which she was not present to witness.

The reason this argument fails is because neither Petitioner nor Mr. Jenkins, in his initial complaint to Attorney Grievance Commission, dated October 3, 2003, or at any other time, has maintained that Mr. Jenkins's signature was a forgery. To the contrary, Mr. Jenkins acknowledged, in his initial complaint, that "I had to sign a Power of Attorney to Mr. Ward...." Obviously, Mr. Jenkins intended that Respondent hold power of attorney over some of his affairs. Therefore, Judge Heard was within the confines of her discretion to consider the power of attorney in her ruling.

The hearing judge found that, although Respondent did not direct Ms. Tyner to notarize the power of attorney, Respondent was found to have provided inadequate supervision of his assistant; therefore, he violated both 5.3(c) and 8.4. *See infra.*

kins'[s] precise instructions, Respondent did not violate Rule 1.1 of the MRPC.

After our examination of the evidence and the record, we agree with the hearing court that Respondent did not violate Rule 1.1.

### Motion to Compel Discovery

Petitioner's third exception states that the hearing court failed to grant Petitioner's request to compel discovery. Almost two months after Judge Heard granted Respondent's motion to vacate the default order, Petitioner filed a motion to compel discovery, which included several requests for explanations, documents, and records that pertained directly to averments contained in Respondent's motion to vacate. Petitioner requested that Respondent provide an explanation as to why he failed to answer timely, why he could not respond timely *pro se,* what other conditions may have been associated with his inability to respond, and furnish a copy of the retainer agreement between Respondent and his attorney. Additionally, Petitioner requested all of Respondent's bank statements from September 1, 2003 to April 1, 2005, his monthly expense payments between August 1, 2003 to April 1, 2005, his professional calendar for the period January 1, 2002 through March 2005 and a statement of his reported income to the Internal Revenue Service.

On July 6, 2006, Judge Heard denied Petitioner's Motion to Compel after reviewing and analyzing each discovery request. The Judge concluded that:

The documents requested and the interrogatories which Petitioner requests this Court to compel be answered are collateral to the substantive issues in this case and are focused on a moot point—the Court has ruled and granted the Motion to Vacate. Petitioner is seeking to go on a fishing expedition of Respondent's financial records hoping to find "something" with which to challenge or impeach credibility at trial. These materials, bank accounts and all corresponding records, history of expenses, calendars and information about income are collateral information that

does not go to the heart of the misconduct at issue. Similarly, the professional calend[a]r for 2004 and 2005, which would be used to determine Respondent's work level, is too distant to form any credible link to financial ability and this Court would not allow Petitioner to utilize it to impeach Respondent.

Consequently, this Court hereby **DENIES** Petitioner's Motion to Compel Discovery.

■ Based upon our review of the record relating to Petitioner's discovery motion and Judge Heard's legal analysis concerning that issue, we conclude that Judge Heard's findings were not clearly erroneous and were supported by clear and convincing evidence. We find no error or abuse of discretion.

### Maryland Rule of Professional Conduct 8.1(a)

■ Petitioner argues that Judge Heard failed to find a violation of Rule 8.1(a), which states that "a lawyer ... in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact[,]" as related to Respondent's representation of Mr. Torain.

The hearing judge held
that Petitioner has [not] proven by clear and convincing evidence any false statements of material fact made by Respondent. Petitioner did, however, present several instances of sloppiness and human errors in the documentation provided by Respondent. The Court of Appeals has held that inexperience can be considered ... a mitigating factor in determining sanctions of an attorney. *Attorney Grievance Commission v. O'Neill,* 285 Md. 52, 55–57, 400 A.2d 415 (1979).

The Judge found that Respondent's inexperience led to the complaints filed against him. Respondent's conduct demonstrated an inability to balance his schedule and find coverage and provide competent representation. Although Respondent, prior to engaging in private practice, enrolled in a course entitled "Going Solo," he was not adequately prepared to take

on the responsibilities of a private practitioner at law. The Judge held that, "however, in weighing the testimony and credibility of the witnesses in this matter, this Court finds that none of the errors or misrepresentations appear to be knowing or intentional."

The hearing judge is in the best position to weigh the evidence and to determine the credibility of the witnesses. In her view, Judge Heard found that Respondent was not diligent and competent in his representation of Mr. Torain. Petitioner's exception is overruled. The hearing court's finding that Respondent was inexperienced and sloppy, does not automatically support a finding that Respondent knowingly or intentionally made false statements.

## RESPONDENT'S EXCEPTIONS

### Mr. Jenkins

#### *Exceeding the Flat Fee Charged*

According to Respondent, the hearing court erred when it found that Respondent violated Rule 1.5 by attempting to bill and collect $5,585.00 from Mr. Jenkins after the Respondent agreed to represent Mr. Jenkins for a flat fee of $5000.00. Respondent argues that Mr. Jenkins testified that he did not believe that he owed an additional $585.00 and did not intend to pay more than the flat fee. Respondent testified at the hearing that he did not try to enforce the collection of any fee in excess of $5,000.00.

The hearing court found that the Respondent's retainer agreement stated that he would represent Mr. Jenkins for $5,000.00, a flat fee. In reviewing the agreement, and as stated earlier, *supra,* Judge Heard concluded that in Respondent's attempt to collect $585.00, he violated MRPC 1.5, which states that attorney fees must be reasonable. According to the hearing court, Respondent attempted to collect the additional amount as payment for "securing Mr. Jenkin'[s] release from jail and preparation for the case. This $585.00 exceeded the fixed fee previously agreed upon by Respondent and Mr.

Jenkins." The hearing court concluded by the clear and convincing evidence standard that, "the $585.00 was an improper additional fee charged to the client and thereby, [Respondent] violat[ed] MRPC Rule 1.5."

■■■ The evidence relied upon by the hearing judge included both the agreement signed by both Mr. Jenkins and Respondent and an itemized bill. The Agreement, dated August 6, 2003, clearly stated that "[c]lient agrees to pay Attorney . . . $5,000.00 . . ." and "[t]his fee constitutes a flat fee for representation, regardless of the nature and extent of services contemplated or rendered, or the amount of time actually expended by Attorney." The accounting of charges dated September 10, 2003, by Respondent for Mr. Jenkins's criminal defense outlines various charges for the time expended. At the bottom of the page it states "Attorney's Fee $5,585.00." The last line states, "Total Balance Due $585.00."

We disagree with Respondent that the hearing judge "misconstrued the evidence on the record." The agreement clearly stated that a flat fee of $5,000.00 would be assessed. The bill for services stated that a balance of $5,585.00 was Respondent's fee, and, thus, $585.00 was due. Mr. Jenkins testimony that he did not intend to pay the additional fee is not dispositive. Therefore, we overrule Respondent's exception to the hearing judge's findings of facts and conclusions of law.

### Ms. Tyner's Conduct [17]

In his second exception, Respondent argues that the hearing court erred when it found that Respondent violated Rules 5.3(c) and 8.4. Respondent contends that he did not assist or induce Ms. Tyner to notarize Mr. Jenkins's power of attorney. Respondent asserts that no fraud, deceit, or misrepresentation was involved on his part, and his conduct was not prejudicial to the administration of justice. According to Respondent,

---

17. Although the hearing court reporter spelled Ms. Tyner's name as "Rosalyn Tinner," we adopt the Judge Heard's spelling as "Tyner."

although Ms. Tyner's conduct was improper, the client's directive was carried out as required.

The hearing court held that Respondent violated Rule 5.3(c), because he knew Ms. Tyner, as Respondent's legal assistant, was under his supervision, and expected to notarize the power of attorney for Mr. Jenkins, who was not actually present at the moment of notarization. The judge found that Respondent failed to take remedial action and stop Ms. Tyner. Therefore, he violated Rule 5.3(c) and Rule 8.4.

A review of Respondent's testimony reveals that he prepared a Power of Attorney which included a notary statement:

PETITIONER: Had you called and asked to determine whether or not you could bring a notary? Did you have any experience doing so?

RESPONDENT: I had no experience in doing so.

PETITIONER: When you got the power of attorney signed and you brought it back to your office, what did you do with it?

RESPONDENT: I gave it to my assistant Rosalyn T[yner].

* * * *

PETITIONER: And did you ask her to do anything with it?

RESPONDENT: I asked her to notarize it.

Testimony of Ms. Tyner:

PETITIONER: Okay. And who asked you to notarize that document?

MS. TYNER: Attorney Ward.

Cross-examination of Ms. Tyner:

RESPONDENT'S ATTORNEY: Now have you been trained as a notary only to sign documents in the presence of the individuals who come into your actual physical presence?

MS. TYNER: Yes.

RESPONDENT'S ATTORNEY: Why was this different?

MS. TYNER: Well, Mr. Jenkins was incarcerated. Attorney Ward had to take the power of attorney down there[,]

to my understanding *and requested me to take care of it.*
[sic] So I thought it was appropriate to do at the time.
(Emphasis added.)

■ We agree with the hearing court that Ms. Tyner was neither induced nor forced by Respondent to notarize the power of attorney outside the presence of Mr. Jenkins. The inappropriate conduct, however, was Respondent's failure to supervise his assistant under the circumstances. Respondent's directive to Ms. Tyner to "take care of it" did not insulate Respondent from responsibility for Ms. Tyner's wrongdoing. In the present case, Mr. Jenkins was incarcerated and he signed the power of attorney in the presence of Respondent. Ms. Tyner was not present during the signing. In deferring to Ms. Tyner to "take care of it," Respondent improperly delegated to his assistant a task he knew or should have known could not have been honestly completed without Mr. Jenkins's actual presence before a notary. Although the evidence is not sufficiently clear and convincing to support a finding that Respondent intentionally misrepresented the facts, the evidence is sufficient, pursuant to the same standard, to support a finding that he violated Rule 5.3 in ordering his assistant to obtain the notarization of a document where the signer was not present. Respondent's second exception is overruled.

### *Mr. Torain*

■ Respondent's third exception asserts that the hearing court erred when it found that clear and convincing evidence existed to prove that Respondent made a false statement in a motion to vacate the default judgment prepared and filed on behalf of Mr. Torain. In the motion, Respondent alleged that Mr. Torain was present in the courtroom on the day of trial when in fact Mr. Torain did not attend, and he was not aware of the actual trial date. Respondent claims that, although the motion contained inaccurate information, the evidence was not sufficient to prove by clear and convincing evidence that Respondent knowingly and intentionally made a false statement to the court.

The court found that "Respondent did not accurately state in his Motion to Vacate Judgment that [Mr. Torain] failed to appear ... at trial." The hearing court determined that Respondent violated 3.3(a)(1) (knowingly making a false statement to the court). In the hearing judge's conclusions of law, beginning with the second paragraph followed by her discussion of Respondent's inaccurate statement, she said, "[t]his court does not find that the Petitioner has proven by clear and convincing evidence any false statement of material fact made by Respondent." The hearing judge reasoned that Petitioner had proven "several instances of sloppiness and human error in the documentation provided by the Respondent." In addition, the judge found that Respondent failed to effectively communicate with or inform his client. This, coupled with Respondent's incompetent representation, led to the entry of a default judgment against Mr. Torain. It is clear from the hearing judge's analysis that she concluded that *no default judgment would have been entered against Mr. Torain if Respondent had properly communicated with his client.* Therefore, Respondent's conduct was ineffective and prejudicial to the administration of justice.

We sustain Respondent's exception as to his violation of Rule 3.3(a)(1). Respondent failed to provide competent representation by failing to notify his client in advance of the scheduled trial date. According to the hearing court "[Respondent] *needed to follow up with the District Court to determine if the motion for continuance had been granted and advise his client accordingly.*" This Respondent failed to do. In addition, the motion to vacate judgment was not filed timely. In his motion to vacate, Respondent misstated the facts. He inaccurately stated that Mr. Torain was in court on the day of trial. It is undisputed that Mr. Torain was not in court because the Respondent failed to notify the client in advance of the trial date. Respondent's misstatements may be attributable to his carelessness rather than any knowing or intentionally deceitful statement. In any event, the hearing judge's conclusion of law that Respondent violated 3.3(a)(1) (to knowingly make a false statement of fact or law to a tribunal)

is inconsistent with her conclusion of law that Bar Counsel failed to prove by clear and convincing evidence that Respondent "made any false statement of material fact." Moreover, a finding that Respondent violated 3.3(a)(1) requires clear and convincing evidence that he knew the statements made were false. *See Attorney Grievance Comm'n v. White,* 354 Md. 346, 365, 731 A.2d 447, 458 (1999) (giving false and misleading testimony measured by the clear and convincing evidence standard is a violation of Rule 3.3(a)(1)). The hearing court did not find that Respondent knew that he had misstated the facts. Although he was inattentive and incompetent in his representation of Mr. Torain, his misstatement to the court as reflected in his motion to vacate judgment was not necessarily intentional and knowing on the basis of the record in this case. We are satisfied that Respondent's conduct supports the hearing court's conclusion that he violated Rule 8.4(d) (Conduct Prejudicial to the Administration of Justice) due to Respondent's overall representation of Mr. Torain; however, his conduct did not violate Rule 3.3(a)(1).

## *SANCTION*

Petitioner recommends that the appropriate sanction for Respondent's misconduct is an indefinite suspension. Petitioner maintains that Respondent "has demonstrated that he is cavalier in his representations to the court, and to the disciplinary authority charged with investigating his alleged misconduct." Petitioner also maintains that an indefinite suspension would give Respondent, time to reflect on his level of competence, organizational, and practice skills. Conversely, Respondent suggests that the appropriate sanction is a reprimand.

It is well settled that our obligation in disciplinary matters is to protect the public and maintain the public's confidence in the legal system rather than to punish the attorney for misconduct. *Att'y Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002); *Att'y Grievance Comm'n v. Kolodner,* 316 Md. 203, 208, 557 A.2d 1332, 1334,

(1989). In addition, our goal when imposing sanctions is to maintain the integrity of the legal profession and to prevent misconduct by other attorneys. *Att'y Grievance Comm'n v. Awuah*, 374 Md. 505, 823 A.2d 651, 663 (2003) (quoting *Att'y Grievance Comm'n v. Blum*, 373 Md. 275, 303, 818 A.2d 219, 236 (2003)). The severity of the sanction depends on the circumstances of each case, the intent with which the acts were committed, the gravity, nature and effect of the violations, and any mitigating factors. *Att'y Grievance Comm'n v. Parker*, 389 Md. 142, 156, 884 A.2d 104, 112 (2005); *Cherry–Mahoi, supra,* 388 Md. at 160, 879 A.2d at 80 (citations omitted).

As to the appropriate sanction for the Respondent's misconduct, there are no decided cases directly on point. We have found cases which involved violations based upon neglect, carelessness and unintentional misconduct, but also involved more egregious violations of the MRPC. In those cases, this Court has imposed various sanctions, ranging from public reprimand to indefinite suspension, depending on several factors, such as previous disciplinary actions, inexperience, or lack of intent. *See Att'y Grievance Comm'n v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003); *Att'y Grievance Comm'n v. Jaseb,* 364 Md. 464, 773 A.2d 516 (2001); *Att'y Grievance Comm'n v. Dworkin,* 316 Md. 457, 560 A.2d 15 (1989). *See also Att'y Grievance Comm'n v. Tinsky,* 377 Md. 646, 835 A.2d 542,(2003); *Att'y Grievance Comm'n v. Garfield,* 369 Md. 85, 797 A.2d 757 (2002); *Att'y Grievance Comm'n v. Mooney,* 359 Md. 56, 753 A.2d 17 (2000).

Our review of similar cases where the attorney was reprimanded because of incompetence and negligence, we find the *Jaseb* case, *supra,* most significant.[18] In *Jaseb* we held that

---

18. In another case involving a reprimand, *Att'y Grievance Comm'n v. O'Neill,* 285 Md. 52, 400 A.2d 415 (1979), O'Neill made false statements to a tribunal, a State's Attorney and an agent from the parole/probation division, stating that he had paid court costs for a conviction of driving while intoxicated. *Id.* at 53–54, 57, 400 A.2d at 416–17, 418. This Court held that a reprimand was an appropriate sanction because: 1) the incident occurred approximately eight (8) months after O'Neill was

the appropriate sanction for an attorney's violation of Rule 5.3(b) was a reprimand. The attorney, Setareh R. Jaseb was found to have violated only one of five charges brought against her, resulting in part from her failure to adequately supervise her law clerk. *Jaseb* at 468, 773 A.2d at 518. In the course of a bankruptcy matter, Jaseb prepared a Chapter 7 Bankruptcy petition on behalf of her client and directed her law clerk to file it in the U.S. Bankruptcy Court. *Id.* at 477, 773 A.2d at 523. The law clerk failed to file the petition. Jaseb contended that she was justified in relying on the clerk's note in the client's file that the petition had been filed. *Id.* In addition, in an underlying debt collection case, Jaseb made inaccurate representations of fact and law to the trial judge and to the opposing attorneys. *Id.* at 474, 773 A.2d at 521. The hearing judge determined that although Jaseb was negligent and incompetent in her representation of the client, her representations to the trial judge and the attorneys involved were not proven to be "intentionally misleading" or fraudulent measured by the clear and convincing evidence standard. *Id.* at 475, 773 A.2d at 522. In concluding that a reprimand was the appropriate sanction, we considered the attorney's inexperience, lack of prior misconduct complaints, the attorney's inaccurate representations, her negligent supervision of her recently hired law clerk, and the lack of prejudice to the client. *Id.*

In other cases, similar to the present case, we have imposed the sanction of suspension.[19] This Court suspended an attor-

---

admitted to the bar; 2) at the time of the incident he had "never practiced law;" 3) he was "financially embarrassed" by the incident; 4) the deception was revealed on the same day it occurred; and, 5) O'Neill wrote a letter to Bar Counsel expressing remorse for his conduct. *Id.* at 55–56, 400 A.2d at 417–18.

19. In *Att'y Grievance Comm'n v. Harris*, 366 Md. 376, 784 A.2d 516 (2001), the violations were very similar to Respondent's and we imposed a sanction of suspension from the practice of law for six (6) months. Harris, an attorney since 1960 violated Rules 1.1, 1.3, 1.4(a), and 8.4(d). *Id.* at 382, 784 A.2d at 519. Harris had three prior sanctions from this Court: in 1987 (six month suspension for several violations); 1996 (reprimand for neglect and failure to adequately

ney, Edwin L. Dworkin from the practice of law for sixty (60) days. *Dworkin,* 316 Md. at 462, 560 A.2d at 17. Dworkin "never advised [his client] of his opinion as to the lack of liability or the slim chance of recovery from a third party nor did he advise her that the statute of limitations on her claim had expired." *Id.* at 459, 560 A.2d at 16. Further, Dworkin misrepresented to his client that settlement offers had been made on three separate occasions. *Id.* at 458, 560 A.2d at 15. Dworkin's violations of the MRPCC were based on negligence, misrepresentation, incompetency, conduct that was prejudicial to the administration of justice and a failure to represent a client zealously. *Id.* at 461, 463, 560 A.2d at 17–18. In arriving at the appropriate sanction, we considered the mitigating factors that Dworkin had practiced since 1970, admitted to his misconduct, expressed remorse and that the misconduct was found to be an isolated occurrence. *Id.* We considered as aggravating factors, "the seriousness of the misrepresentations[, and that he] perpetuated the misconduct over a two year period by intentionally misleading his client. . . ." *Id.* at 463, 560 A.2d at 18. We imposed a 60 day suspension. *Id.*

There are several other cases where we have imposed an indefinite suspension, with varying periods in which the attorneys were permitted to apply for reinstatement to the bar, because of violations resulting from negligent misconduct, sloppy representation and conduct prejudicial to the administration of justice. *See Att'y Grievance Comm'n v. Ficker,* 349 Md. 13, 706 A.2d 1045 (1998) (imposing an indefinite suspension, with the right to reapply after 120 days, for violation of Rules 1.1, 1.3, 3.4, 5.1, and 8.4(d) and there was a previous reprimand for lack of diligence, lack of trial preparation, failure to appear in court, and for assigning inexperienced attorneys to difficult cases without adequate training or guid-

---

communicate with clients); 1999 (reprimand for failure to file suit on behalf of his client). *Id.* at 383, 784 A.2d at 520. Harris failed to communicate, failed to obtain discovery, did not reschedule his client for a missed conference concerning interrogatories, failed to terminate his representation and failed to appear at trial for the two clients who filed the grievance. *Id.* at 386–87, 784 A.2d at 531–22.

ance); *Att'y Grievance Comm'n v. Santos*, 370 Md. 77, 88, 803 A.2d 505, 511 (2002) (imposing an indefinite suspension, with the right to apply for reinstatement after 90 days, for violating Rules 1.1, 1.3, 1.4, 1.15, 1.16, 8.1(b), 8.4(d), and 16–604 resulting from negligent representation and failure to return client's fees; and holding that, although the attorney was neglectful, he did not intentionally defraud his clients); *Att'y Grievance Comm'n v. Brugh*, 353 Md. 475, 479–480, 727 A.2d 913, 915 (1999) (imposing a conditional indefinite suspension with the right to apply for reinstatement after 60 days for violation of Rules 1.1, 1.3, 1.4, 1.16, and 8.4(d) and accepting as a mitigating factor that the attorney suffered from clinical depression when he violated the MRPC); *Att'y Grievance Comm'n v. Drew*, 341 Md. 139, 669 A.2d 1344 (1996) (holding that an indefinite suspension, with the right to apply for reinstatement after one year and certain conditions was an appropriate sanction for violating Rules 1.1, 1.3, 1.4, 1.15, 5.3, and 8.4(a) for failure to communicate with his clients, act diligently, and adequately supervise his staff).

The recent case of *Seiden, supra,* 373 Md. at 413, 423, 818 A.2d at 1110, 1116, which involved the imposition of an indefinite suspension as a sanction for misconduct is instructive. In *Seiden,* an attorney, was found to have violated Rules 1.1, 1.15(a), 8.4(a) and (d). We imposed a sanction of indefinite suspension, with the right to reapply within 30 days because the attorney deducted his fee of $4,400.00 from a client's escrow funds without obtaining a consent from the client or approval from the Orphan's Court. *Seiden,* 373 Md. at 413, 423, 818 A.2d at 1110, 1116. In considering the appropriate sanction, we noted several mitigating factors: (a) the attorney's remorse; (b) that an illness prevented Seiden from requesting approval from the Orphan's Court to withdraw his fee; and (c) that Seiden was cooperative in the investigation. 373 Md. at 425, 818 A.2d at 1117. This Court held that because Seiden's violations occurred as a result of his interactions with a particularly difficult client, it was unlikely that Seiden's conduct would be repeated, and he had practiced for many years without any previous disciplinary charges. *Id.*

The examples set forth are a wide range of sanctions for misconduct similar to Respondent's actions. In *Jaseb, supra,* we set forth some of the factors that we weigh in an attempt to impose the appropriate sanction in disciplinary matters:

> As this Court stated in *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975) "[w]here an attorney has been shown to have been negligent, or inattentive to his client's interests . . . in violation of the canons . . . the imposition of some disciplinary sanction against him may be warranted; the extent of the discipline to be applied, however, is generally dependent upon the severity of the conduct and the particular facts and circumstances surrounding it." *Id.* at 362, 347 A.2d at 561 (emphasis added).

*Jaseb,* 364 Md. at 481, 773 A.2d at 525–26 (citations omitted).

In addition, we stated that

> some of the factors that this Court has considered in determining an appropriate sanction include: "absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses." [*Attorney Grievance Comm'n v. Glenn,* 341 Md. at 488–89, 470, 671 A.2d 463, 483 (1996)] (citations omitted).

*Id.* at 481–482, 773 A.2d 516.

In the present case, Respondent violated Rules 1.5, 5.3(a), and 8.4(d) in his representation of Mr. Jenkins. He violated Rules 1.1, 1.3, 1.4, and 8.4(d) in his representation of Mr. Torain. The hearing court concluded, and we agree, that Respondent's misconduct was the result of inexperience, in-

competency, and an inability to balance his work schedule.[20] Respondent's violations concerning Mr. Torain stemmed mainly from over committing himself and his lack of communication with his client. Despite his shortcomings, he has made an effort to repay Mr. Torain for the default judgment entered against him as well as refunding his retainer fee. In addition, there was no history of prior disciplinary offenses. Respondent's misdeeds did not rise to the level of a misappropriation of client funds or intentional dishonesty.

We do not condone Respondent's actions. Although the representation he agreed to provide would have been considered routine for an experienced practitioner, Respondent was unfamiliar with the basic procedures for obtaining his client's release on bail or experienced in how to maneuver his way through a civil proceeding in the District Court. Even if Respondent's knowledge, skill, thoroughness, and preparation was lacking in an area of law, he was still required to provide competent representation. *See* Rule 1.1 and accompanying comments. Respondent's actions resulted in a default judgment entered against one of his client's, Mr. Torain. Additionally, the other complaint filed against Respondent involved his failure to adequately supervise his employee, Ms. Tyner. Mr. Jenkins was in jail at the time he signed the power of attorney that Respondent prepared for his signature, and Mr. Jenkins signed the document in Respondent's presence. The Respondent returned to his office with the un-notarized document and directed Ms. Tyner "to take care of it." Ms. Tyner notarized the power of attorney without having witnessed Mr. Jenkins's signature, and Respondent knew at the time he obtained Mr. Jenkins's signature that the document was not notarized. Respondent's actions, under the circumstances, reflected negatively on the administration of justice and the Bar.

---

**20.** At the time of Respondent's representation of Mr. Jenkins and Mr. Torain, Respondent had been a member of the Bar for less than two years and after working in the State's Attorney's Office for less than one year, he set up a private practice.

A reprimand, as imposed in *Jaseb*, would be too lenient a sanction because Respondent's violations are neither limited to a single rule violation nor to one client. Moreover, we find both *Seiden* and *Dworkin* instructive on the issue of imposing the appropriate sanction in this case. Although the attorney in *Seiden* committed similar violations, he was found to have violated 8.4(a) (knowingly assisting or inducing another to violate or attempt to violate the MRPC), a more egregious violation because of the elements of knowledge and intent. The attorney in *Seiden* charged the client a fee that he was entitled to receive for his services. Respondent, however, in the present case overcharged the client, $585.00, after agreeing to a flat fee of $5,000.00 for his services. In *Seiden*, although the attorney was an experienced practitioner and should have known better than to secure his fee without prior authorization, we found that the attorney's illness was a mitigating factor that weighed in his favor.

The attorney in *Dworkin*, like Respondent was negligent, incompetent and dilatory in representing the client. Dworkin allowed the statute of limitations to expire before filing his client's claim. In addition, Dworkin failed to advise his client and intentionally mislead her for two years. Similarly, Dworkin's conduct, like Respondent's, was prejudicial to the administration of justice and the Bar. Although, Dworkin was an experienced practitioner and Respondent is inexperienced, that is a distinction without a difference considering the prejudicial impact on the client, the administration of justice, and the Bar.

Therefore, we impose as a sanction in this case an indefinite suspension with the right to apply for reinstatement after 60 days. The suspension shall commence thirty (30) days after the filing of this Opinion.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COST OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY**

GRIEVANCE COMMISSION OF MARYLAND AGAINST KENNETH STANFORD WARD.